United States District Court
Southern District of Texas
**ENTERED**
October 20, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BIMAL K. BANIK, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-00462 |
| | § | |
| ANGEL TAMEZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>OPINION</u>

The Court now considers Bimal Banik's ("Plaintiff") remand motion,[1] and twenty-three of the twenty-four defendants' (collectively "Defendants") response.[2] The Court also considers Defendants' motion for leave to amend their removal notice,[3] as well as Defendants' motion for leave to supplement the state court record.[4] After duly considering the record and authorities, the Court **DENIES** Plaintiff's remand motion, **GRANTS** Defendants' motion to supplement the record, and **DENIES AS MOOT** Defendants' motion to amend its removal notice to clarify the statutory basis for removal.

### I.   BACKGROUND

Despite the apparent complexity of this case, its birth was rather simple. Plaintiff was a tenured professor at the University of Texas Pan-American ("UTPA"),[5] and one of his chemistry students—Amanda Ybarra—filed a formal complaint with the University alleging that Plaintiff had sexually harassed her.[6] UTPA initiated a formal investigation,[7] during which another

---

[1] Dkt. No. 9.
[2] Dkt. Nos. 11 & 14.
[3] Dkt. No. 12.
[4] Dkt. No. 13.
[5] Dkt. No. 1-12 at p. 585.
[6] *Id*. at p. 588–89.

student—Angel Tamez—came forward with an audio recording proving that Plaintiff was recruiting students to slander Ybarra in order to discredit her.[8] UTPA issued a recommendation that Plaintiff be fired because he violated multiple University policy provisions.[9]

Of course, more procedural hurdles had to be overcome to fire a fully tenured professor. UTPA Provost Havidan Rodriguez recommended to UTPA President Robert Nelson that Plaintiff be fired.[10] Then President Nelson initiated termination proceedings pursuant to UT System Regents Rule 31008.[11] Thereafter, an official tribunal was convened for three days to determine whether Plaintiff violated University policy.[12] The tribunal determined that Plaintiff violated University policy, and unanimously recommended that Plaintiff be fired.[13] President Nelson, in turn, formally recommended to Paul Foster, the Chairman of the UT Board of Regents, that Plaintiff be fired.[14] Finally, the UT Board of regents itself convened, adopted the UTPA tribunal's findings, and voted to fire Plaintiff.[15] Plaintiff received notice of his termination in the mail.[16]

Quite independently of Plaintiff's cause-based termination, and *after* Plaintiff had been fired, UTPA dissolved by legislative decree.[17] The Texas legislature intended to facilitate the transition of many UTPA faculty to the University of Texas Rio Grande Valley ("UTRGV"). However, the UT System Board of Regents also adopted a coordinate policy that ultimately

---

[7] *Id*. at p. 589.
[8] Dkt. No. 1-11 at p. 299.
[9] *Id*. at p. 300.
[10] *Id*.
[11] *Id*.
[12] *Id*.
[13] *Id*. at p. 302.
[14] *Id*. at p. 303.
[15] *Id*.
[16] *Id*.
[17] Tex. Educ. Code § 79.01-79.10. Plaintiff received notice of his termination by mail on November 14, 2014, and UTPA dissolved on August 31, 2016.

disqualified Plaintiff from being hired at UTRGV based upon UTPA disciplinary proceedings against him.[18]

When the dust had settled, Plaintiff was neither employed by either UTPA or UTRGV. Plaintiff sued in state court virtually everybody who was formally involved in his termination, including: *Angel Tamez* (the student who recorded Plaintiff's scheme to slander Amanda Ybarra), *Amanda Ybarra* (the student who reported Plaintiff had sexually harassed her), the *UT Regents* who voted to fire Plaintiff (Defendants Foster, Powell, Hicks, Aliseda, Crandberg, Hall, Hildebrand, Pejovich, and Stillwell), *various UTPA officials* (Defendants Thompson, Guerra, Cantu, Sethi, Nelson, Rodriguez, Mora, Crown, and Faver), *the President of UTRGV* (Defendant Bailey), and *the Universities themselves* (UTPA, UTRGV, and the University of Texas System)—twenty-four (24) defendants in all.[19] Plaintiff alleged various federal and state causes of action.

Not all Defendants were part of the lawsuit from its inception. They were added incrementally as the state court litigation progressed. For example, Plaintiff's original petition only named Angel Tamez as a defendant.[20] Plaintiff's first amended petition named UTPA officials Thompson, Guerra, and Cantu, as defendants, as well as UTPA and the University of Texas System.[21] The nine UT Board of Regents defendants were not named until Plaintiff's ninth amended petition.[22] And Plaintiff had to amend his petition a tenth time to sort out which UT Regents he actually wanted to sue.[23]

---

[18] Dkt. No. 11. at p. 5.
[19] Dkt. No. 1-12 at pp. 1–15.
[20] Dkt. No. 1-6 at p.2.
[21] Dkt. No. 1-6 at p. 16.
[22] Dkt. No. 1-12 at p. 482.
[23] Dkt. No. 1-12 at pp. 583–628.

The nine Regents named in Plaintiff's tenth amended petition filed notice of removal on August 8, 2016.[24] Though the removal notice was only filed by nine UT Regents, every other defendant provided express consent to the removal.[25] Attached to the removal notice are over two-thousand (2,000) pages of state court filings.[26] Nevertheless, Defendants admit that they failed to attach forty-four (44) state court orders, most of which involved setting motions for hearings or submission,[27] as well as service of process to Defendant Ybarra.[28] Plaintiff filed his motion to remand on September 9, 2016,[29] and Defendants responded on September 28, 2016.[30]

Plaintiff makes three arguments for remand. *First*, he argues remand should be granted due to procedural defects in Defendants' removal notice. *Second*, he argues that certain plaintiffs waived their right to consent to removal by filing various motions in state court. And *third*, Plaintiff argues that the Court lacks supplemental jurisdiction to entertain certain state-law claims. The Court now takes up Plaintiff's motion to remand, addressing each argument in turn.

## II.   DISCUSSION

### A.  *Procedural Defects in Removal*

Section 1446(a) of 28 U.S.C. requires a removing defendant to include in his notice of removal: "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." Of course, failure to include all this information does not deprive the Court of its jurisdiction, but rather, is only a "modal" defect.[31] Thus, the Fifth Circuit and district courts in

---

[24] Dkt. No.1.
[25] *See* Dkt. No. 1 at p. 1 & p. 4.
[26] *See* Dkt. No. 1.
[27] Dkt. No. 11 a p.14.
[28] Dkt. No. 11 at p. 10.
[29] Dkt. No. 9.
[30] Dkt. No. 11.
[31] *See Covington v. Indem. Ins. Co. of N. Am.*, 251 F.2d 930, 933 (5th Cir. 1958).

Texas have determined that the correct remedy for such violations is to order the defendant to supplement the record—not to remand.[32]

Here, Plaintiff contends, and Defendants openly admit,[33] that Defendants' notice of removal is procedurally defective because it lacks content required by federal statute and local rule, and also because it contains information in excess of what local rules permit.[34] Defendants did not include all the state court orders and did not include service of process to Defendant Ybarra in their removal notice. Furthermore, Local Rule 81 states, in pertinent part: "Notices for removal shall have attached *only* the following documents: (1) all executed process in the case, (2) pleadings . . . (3) all orders signed by the state judge, (4) the docket sheet, (5) an index of matter[s] being filed, and (6) a list of all counsel of record . . . ."[35] However, Defendants included state court motions, which do not fall into any category listed. Thus, they should not have been included in the removal notice.

Remand is not, however, the proper remedy in this instance. As noted, the proper remedy when a defendant fails to supply sufficient information under 28 U.S.C. § 1446(a) is to require them to supplement the record via 28 U.S.C. § 1447(b).[36] Moreover, the Court observes that 28 U.S.C. §1446(a) provides a floor—a bare minimum for what a defendant's notice of removal must contain. It does not provide a ceiling. The language of Local Rule 81 does, however, provide a ceiling, and Defendants have violated Rule 81 by going beyond that ceiling by including state court motions in their removal notice. Nonetheless, the Court finds that remand is

---

[32] *See Covington*, 251 F.2d 933; *James J. Flanagan Shipping Corp. v. Mediterranean shipping co., S.A.*, 499 F. Supp. 2d 710, 711–12 (E.D. Tex. 2007); Moses v. Zimmer Holdings, Inc., No. CIV.A. H-06-1350, 2007 WL 3036096, at *10–11 (S.D. Tex. June 29, 2007); *Smith v. Estate of Wagner*, No. CIV A H 4-06-02629, 2006 WL 272982, at *4 (S.D. Tex. Sept. 25, 2006); *Flores v. Baldwin*, No. 3:01-CV-2873-P, 2002 WL 1118504, at *4 (N.D. Tex. May 28, 2002); *see also Rocha v. Brown & Gould LLP*, 61 F. Supp. 3d 111, 112–13 (D.D.C. 2014).
[33] Dkt. No 11 at pp. 7–12.
[34] Dkt. No. 9 at pp. 10–14.
[35] L.R. 81 (emphasis added).
[36] *Supra* note 32.

Case 7:16-cv-00462   Document 23   Filed in TXSD on 10/20/16   Page 6 of 19


not warranted on that basis for two reasons. The first is that Local Rule 81 does not state that remand is the remedy for a violation. The second reason is that it is often the case that the Court must deal with motions filed in state court. In such cases, the Court must have access to the motions filed in state court. It makes no sense to punish a defendant with remand simply for providing what the Court may ultimately need to do its job.

The Court observes that Defendants have filed motions for leave to amend and supplement the defective record, and attached the omitted documents.[37] For the reasons stated above, the Court **GRANTS** Defendants' motions to supplement the record pursuant to 28 U.S.C. § 1447(b), and considers the supplement duly submitted as of the date of this order. Defendants' admitted procedural defect in their removal notice is not a valid basis for remand.

### B.  *The Last-Served Defendant Rule*

As indicated above, Defendants have filed a motion for leave to amend their removal notice.[38] In their original removal notice, they indicate that removal was made under 28 U.S.C. § 1441(c).[39] However, in their motion for leave to amend, Defendants clarify that this was an error, and that they intended to remove under 28 U.S.C. § 1441(a).[40] The Court finds that Defendants' removal was properly made under 28 U.S.C. § 1441(a), despite the typographical error. The Supreme Court has demonstrated a preference for substance over form. In *Johnson v. City of Shelby, Miss.*,[41] for example, the Supreme Court found a § 1983 claim was asserted although the statute was never actually cited in the plaintiff's petition.[42] The policy underlying this decision is to "avoid civil cases turning on technicalities."[43] Though *Johnson* focused on the Federal Rules

---

[37] Dkt. Nos. 12 & 13
[38] Dkt. No. 12.
[39] Dkt. No. 1. at p. 1.
[40] Dkt. No. 12. at p. 2.
[41] *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014).
[42] *Id.*
[43] *Id.*

of Civil Procedure in its analysis, rather than the removal statute at bar, this Court finds its mode of reasoning persuasive—substance, rather than form, controls the Court's determination of the basis for removal.

Here, it is clear from the body of Defendants' removal notice that they intended to remove under Section 1441(a), because they express a desire for this Court to entertain *every* claim made against them.[44] Section 1441(c), on the other hand, addresses severance and remand after removal of actions involving some claims the Court has jurisdiction to entertain, and some claims the Court *does not have jurisdiction to entertain*.[45] It then instructs the Court to sever and remand the latter category of claims.[46] In fact, the wording and title[47] of Section 1441(c) suggest that it is an instruction manual to the Court on how to handle such cases after removal, and not an independent basis for removal.

It is clear from the removal notice itself that removal was made pursuant to Section 1441(a) in this case because Defendants specifically assert that the case presents a federal question. Importantly, and more significantly, Defendants clearly state the basis for jurisdiction: "This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331."[48] Thus, the basis for this Court's jurisdiction is clear, and the Court sees no need to amend the removal notice.

Section 1446(b)(2)(A) provides that removal under Section 1441(a) requires *all* defendants to consent to removal, or as the Fifth Circuit has worded it: "[w]hen a civil action has

---

[44] Dkt. No. 1. at p. 2. ("By denying him employment at UTRGV, Banik complains that the UT System Regents deprived him of his property interest in continued employment at UTPA, which Banik alleges included employment at UT System and entitled him to automatic employment at UTRGV, without due process as required by the Fifth and Fourteenth Amendments. See Plf's Tenth Am. Pet. at 36-38. Based on these claims, which arise under the Constitution of the United States, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331."). *See also* p. 3. ("Pusuant to 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over Banik's state law claims, as they are so related to those claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United State Constitution.").
[45] *See* 28 U.S.C.A. § 1441(c) (West).
[46] *Id.*
[47] "Joinder of Federal Law Claims and State Law Claims."
[48] Dkt. No. 1. at p. 1. *See also* Dkt. No. 12. at p. 2, FN 1.

multiple defendants, as is the case here, then all defendants must act collectively to remove that case . . . ."[49] Section 1446(b)(2)(C) explains further that a defendant whose thirty (30) day window for removing has expired may still consent to removal in the event a later-served defendant decides to remove.[50] This is known as the "last-served defendant" rule. Defendants prove in their removal notice, and Plaintiff does not contest, that the last served defendants in this case—nine UT Regents—removed the case, while every other previously-served Defendant expressly consented to that removal.[51] Thus, removal in this instance does not run afoul of Section 1446(b)(2)(A)'s dictate that all defendants must consent to removal, and removal is also in accord with the last-served defendant rule.

However, Plaintiff argues that the consent of certain earlier-served Defendants was vitiated by their filing various motions in state court, the implication being that the *whole* case should thus be remanded in light of the unanimous consent requirement in Section 1446(b)(2)(A). In particular, Plaintiff points out that "Defendants Thompson, Guerra, Cantu, Sethi, Nelson, Rodriguez, Baily, Mora, Crown, Faver, UTPA, and UT System filed motions for summary judgment seeking to dismiss state and/or federal claims brought against them and/or sought to dismiss the suit on jurisdictional grounds."[52]

The Court disagrees for four reasons. *First*, following the 2011 changes to § 1446, the Fifth Circuit has not yet ruled on the issue of whether an earlier-served defendant can waive— via litigation in state court—his right to consent to removal initiated by a later-served

---

[49] *Ortiz v. Young*, 431 Fed.Appx. 306, 307 (5th Cir.2011).
[50] 28 U.S.C.A. § 1446(b)(2)(C) (West); *see also Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 554 (S.D. Tex. 2015).
[51] *See* Dkt. No. 1. at pp. 4–5 (signature of William T. Dean, counsel for every Defendant except Amanda Ybarra and Angel Tamez); *see also* Dkt. No. 1-1 (signatures of Amanda Ybarra and Angel Tamez).
[52] Dkt. No. 9. at p. 5.

defendant.[53] *Second*, it appears that most, if not all, districts in the Fifth Circuit have so far determined that no such waiver exists.[54] *Third*, the Court agrees with the reasoning in this line of cases, which is spelled out quite nicely in *Eclipse*:

> [T]he last-served defendant rule weighs in favor of not applying the doctrine of waiver to this situation. The last-served defendant rule explicitly provides that an earlier-served defendant may consent to removal initiated by a later-served defendant even though that earlier-served defendant did not previously initiate or consent to the removal. *See* 28 U.S.C. § 1446(b)(2)(C). The statute makes no distinction between whether an earlier-served defendant's failure to remove was inadvertent or deliberate, and does not consider the earlier-served defendant's reason for not removing. The rule acknowledges that "[f]airness to later-served defendants . . . necessitates that they be given their own opportunity to remove, even if the earlier-served defendants chose not to remove initially." H.R. Rep. 112-10, 14, 2011 U.S.C.C.A.N. 576, 580. The rule was intended to provide for "equal treatment of all defendants in their ability to obtain Federal jurisdiction over the case against them." *Id.* Application of the waiver doctrine to an earlier-served defendant prevents all defendants from unanimously consenting to removal, which in turn, defeats the purpose of the last-served defendant rule.[55]

Put plainly, to apply the waiver rule in cases like the one at bar would undo one of the main purposes of the 2011 Amendments.

*Fourth*, Plaintiff relies on authorities that are not on point. He cites *Mims*,[56] *ASAP*,[57] and *Air Starter*[58] for the proposition that a defendant waives his right to consent to removal by litigating his case in state court. However, *Mims* applied the pre-2011 "earliest-served defendant" rule, which is not relevant in the present case. *ASAP* was conducting its analysis in the context of

---

[53] *See Eclipse Aesthetics LLC v. Regenlab USA, LLC*, 3:16-CV-1448-M, 2016 WL 4800342, at *3 (N.D. Tex. Sept. 12, 2016).
[54] *See Eclipse Aesthetics LLC*, 2016 WL 4800342, at *3; *Mathis v. DCR Mortg.*, III Sub I, LLC, 942 F. Supp. 2d 649, 650 (W.D. Tex. 2013); *Bisso Marine Co., Inc. v. Techcrane Intern.*, LLC, CIV.A. 14-0375, 2014 WL 4489618, at *2 (E.D. La. Sept. 10, 2014); *see also Act II Jewelry, LLC v. Wooten*, 15 C 6950, 2015 WL 7889039, at *3 (N.D. Ill. Dec. 4, 2015); *Vermillion Area Chamber of Commerce & Dev. Co. v. Eagle Creek Software Services*, Inc., 4:15-CV-04158-KES, 2016 WL 2851324, at *2–4 (D.S.D. May 13, 2016).
[55] *Eclipse Aesthetics LLC*, 2016 WL 4800342, at *3 (quoting *Act II Jewelry, LLC v. Wooten*, 2015 WL 7889039, at *3 (N.D. Ill. Dec. 4, 2015).
[56] *Mims v. Deepwater Corrosion Serv.*, Inc., 90 F. Supp. 3d 670, 700 (S.D. Tex. 2015).
[57] *ASAP Auto Grp., L.L.C. v. Marina Dodge, Inc.*, 3 F. Supp. 3d 573, 577 (S.D. Miss. 2014);
[58] *Air Starter Componentes, Inc. v. Molina*, 442 F. Supp. 2d 374 (S.D. Tex. 2006).

forum selection clauses, and only cited pre-2011 Fifth Circuit cases to support its proposition. Finally, *Air Starter* is another pre-2011 case, and therefore inapplicable in this instance. In sum, Plaintiff's arguments are unpersuasive, and the Court finds that no Defendants have waived their right to consent to removal. Thus, removal is not improper for lack of unanimous consent by the defendants to remove.

Plaintiff also argues that certain Defendants waived their right to remove because: "counsel for Bailey, Rodriguez, Nelson, Thompson, Mora, Crown, Faver, and UTPA stipulated there would be no removal to federal court."[59] These words are the sum total of his argument. Plaintiff attaches a letter from counsel representing the above-listed Defendants, written to Plaintiff's counsel.[60] In the letter, Defendants' counsel states: "There will be no removal to federal court *since your addition of parties was outside scheduling order deadlines*."[61] As Defendants explain, and as the words themselves suggest, this statement is not a stipulation when read in context.

Defendants point out that the state court's docket control order prohibited Plaintiff's addition of new parties in his fifth amended petition, because the date for adding parties had expired.[62] Plaintiff sought to add defendants in his fifth amended petition against whom *federal claims* would be made (*i.e.* a basis for removal), including Bailey, Rodriguez, Nelson, Thompson, Mora, Crown, Faver, and UTPA.[63] To that point, no federal claims had been made in any previous petition,[64] and there was never diversity jurisdiction from the inception of the case. In other words, defense counsel was saying that no basis for removal existed "since [the]

---

[59] Dkt. No. 9. at p. 6.
[60] *See* Dkt. No. 9-14.
[61] *Id*.
[62] Dkt. No. 11 at p. 23.
[63] *See* Skt. No. 1-8 at pp. 105–112.
[64] *See* Dkt. No. 1-8 at pp. 15–31. (Plaintiff's fourth amended petition).

addition of parties was outside scheduling order deadlines,"[65] and because the only basis for removal—federal question—laid in federal claims levied against those new Defendants. It was only two days *after* this letter was written that the state court permitted Plaintiff to add the new Defendants, and the federal claims against them.[66] Thus, Defendants did not waive their right to consent to removal because Defense counsel's statement was not a stipulation.

### C. *Supplemental Jurisdiction*

Congress has provided district courts with supplemental jurisdiction over certain state law claims that can be anchored in federal question claims. Specifically, the state law claims must be "so related to [the federal question claim] that they form part of the same case or controversy under Article III of the United States Constitution."[67] Put another way, "[t]he state and federal claims must derive from a common nucleus of operative fact . . . such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding.[68] It is now "absolutely clear" that a state law claim meets the "common nucleus" test if it arises from the same transaction or occurrence as the federal anchor claim.[69]

However, it is less clear how to proceed when there is some overlap, *but not a perfect factual overlap*, between the federal and state claims in question, and the Fifth Circuit does not appear to have addressed this issue head on. District courts in Texas are divided. At least two district courts have held that a "loose factual connection" between the claims is not enough,[70] while another, citing the Seventh Circuit, has determined that a "loose factual connection" is

---

[65] *See* Dkt. No. 9-14.
[66] *See* Dkt. No. 13-2 at p. 32; *see also* Dkt. No. 11 at p. 23. FN 22.
[67] 28 U.S.C.A. § 1367(a) (West).
[68] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).
[69] Federal Practice and Procedure § 3567.1 (3d ed.2008); *see Cordero v. Voltaire, LLC*, A-13-CA-253-LY, 2013 WL 6415667, at *3 (W.D. Tex. Dec. 6, 2013); *Hamilton v. Burlington N. Santa Fe Ry. Co.*, A-08-CA-129-SS, 2008 WL 8148619, at *11 (W.D. Tex. Aug. 8, 2008) (citing *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540–41 (2002).
[70] *Donahue v. Tokyo Electron Am., Inc.*, 42 F. Supp. 3d 829, 840 n.6 (W.D. Tex. 2014); *Stewart v. Am. Van Lines*, 4:12CV394, 2014 WL 243509, at *2 (E.D. Tex. Jan. 21, 2014).

enough.[71] The rationale for this latter position is that the notion of a state and federal claim being part of the same "case or controversy" under Article III of the Constitution is *stretched to its constitutional limit* for purposes of supplemental jurisdiction analysis.[72] The Court proceeds on the supposition that a perfect factual overlap need not exist, but that enough of one must exist "such that [the plaintiff] would ordinarily be expected to try [the federal and state claim] all in one judicial proceeding."[73]

If a district court finds that it has supplemental jurisdiction over a state claim, it may remand the claim anyway in its discretion for the common law purposes of "judicial economy, convenience, fairness, and comity."[74] Moreover, the Court, if it finds it has supplemental jurisdiction over state claims, may also remand the state claims in its sound discretion if they are novel or complex, if they substantially predominate over the federal claims such that they "constitute[] the real body of a case, to which the federal claim is only an appendage,"[75] if the federal anchor claims have been dismissed, or if there is some other compelling reason to remand.[76]

## I.   Wiretap and Invasion of Privacy Claims

The Court has supplemental jurisdiction over Plaintiff's state wiretap and invasion of privacy claims because they arise from the same facts as Plaintiff's federal wiretap claim. Plaintiff's federal wiretap claim is derived from 18 U.S.C. § 2511, which prohibits the intentional interception, use, or disclosure of wire, oral, or electronic communications.[77]

---

[71] *Lucarino v. Con-Dive*, LLC, CIVA H-09-2548, 2010 WL 786546, at *2 (S.D. Tex. Mar. 5, 2010).
[72] *See* 13D Fed. Prac. & Proc. Juris. § 3567.1 (3d ed.); *see also Lucarino*, 2010 WL 786546, at *2.
[73] *Gibbs*, 383 U.S. at 725.
[74] *See Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir.2008), overruled on other grounds by *Arana v. Ochsner Health Plan*, 338 F.3d 483 (5th Cir.2003) (citing *McClelland v. Gronwald*, 155 F.3d 507, 519 (5th Cir. 1998) (noting that "no single factor is dispositive")).
[75] *Gibbs*, 383 U.S. at 727.
[76] 28 U.S.C.A. § 1367(c)(1)–(4) (West).
[77] 18 U.S.C.A. § 2511(1) (West).

Furthermore, 18 U.S.C. § 2515 renders such intercepted communications inadmissible as evidence in trials, hearings, and other specifically enumerated proceedings.[78] Plaintiff's state wiretap claim is derived from Texas Penal Code § 16.02 and Section 123.002 of the Texas Civil Practice and Remedies Code.[79] Both provisions generally prohibit the intentional interception, use, or disclosure of wire, oral, or electronic communications.[80] Moreover, Texas Code of Criminal Procedure 18.20 § 2(a) renders such communications inadmissible in judicial and other proceedings under certain circumstances.[81]

Plaintiff's state and federal wiretap claims, as well as his state invasion of privacy claim, all appear to arise from Defendant Angel Tamez's recording of his conversation with Plaintiff, proving Plaintiff intended to slander Defendant Ybarra.[82] They also all appear to arise from the use of the recording by the UT Regents when determining whether or not to terminate Plaintiff.[83] Put plainly, the Court has supplemental jurisdiction over Plaintiff's state wiretap and invasion of privacy claims because they arose from the same facts as Plaintiff's federal wiretap claim.

II. <u>Texas Declaratory Judgment Claims</u>

Plaintiff makes two distinct declaratory requests under the Texas Uniform Declaratory Judgment Act ("UDJA"). Plaintiff first requests a declaration that "he was denied a constitutionally protected interest in continued employment by UTPA, UTRGV, and UT System without due course of law."[84] Plaintiff cites the Texas Constitution's equivalent of federal Due Process.[85] Plaintiff provides no explanation, and again refers the Court to his entire fact section.[86]

---

[78] 18 U.S.C.A. § 2515 (West).
[79] Dkt. No. 1-12 at pp. 598–99.
[80] Tex. Pen. Code Ann. § 16.02 (West).
[81] Tex. Crim. Proc. Code Ann. art. 18.20 § 2 (West).
[82] Dkt. No. 1-12 at p. 589.
[83] Dkt. No. 1-12 at p. 596.
[84] Dkt. No. 1-12.
[85] *See* Tex. Const. art. I, § 19("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.").

Not once does Plaintiff mention the Texas Constitution in his facts section, and his claims on this ground are altogether indistinguishable from his federal Due Process claims. Thus, the Court finds that Plaintiff's state and federal Due Process claims arise from exactly the same transactions or occurrences, as does Plaintiff's state-based declaratory request concerning them. The Court has supplemental jurisdiction to entertain this Due Process-based UDJA claim.

Plaintiff's second UDJA claim asks the Court to declare that UTPA and the UT System violated the Texas Constitution by using state funds to pay for Defendant Tamez's representation.[87] Plaintiff also asks the Court to make specific sub-declarations that potentially avoid exceptions to this general prohibition.[88] Defendants counter that Plaintiff's second UDJA claim arises from the same facts as Plaintiff's federal Due Process claims, as well as Plaintiff's federal wiretap claims, and that consequently, the Court has supplemental jurisdiction to entertain Plaintiff's second UDJA claim.[89]

The Court agrees. Plaintiff's federal wiretap claim arises in part from the act of, circumstances surrounding, and subsequent disclosure and use of *Defendant Tamez's recording*. One of Plaintiff's specific requests in his second UDJA claim is that the Court declare that "Tamez's actions *in making the illegal recording* were not on behalf of UTPA and/or [the] UT System."[90] Of course, in order to make this determination, the Court would have to evaluate the act of, and circumstances surrounding *Defendant Tamez's recording*, just as in Plaintiff's federal wiretap claim. Thus, Plaintiff's federal wiretap claim and second UDJA claim share enough in common factually that they would ordinarily be expected to be tried in the same proceeding, and this Court has supplemental jurisdiction over the state claim.

---

[86] Dkt. No. 1-12 at p. 625.
[87] Dkt. No. 1-12 at p. 599. *See* Tex. Const. art. III § 52(a); *see also id.* at § 51.
[88] *See id.* at p. 601.
[89] Dkt. No. 11 at pp. 34–35.
[90] Dkt. No. 1-12 at p. 601.

III. <u>Whistleblower Claims</u>

The Texas whistleblower statute prohibits state and local agencies from retaliating against their employees for "report[ing] a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority."[91] Defendants argue that the Court has supplemental jurisdiction over this claim because it arises from the same facts as Plaintiff's federal Due Process claim. In particular, Defendants point out that both claims arise, at least in part, from the fact that Plaintiff was *fired from UTPA*.[92] Plaintiff counters that the Due Process claim does not arise from Plaintiff's being fired, but rather, from "the process or procedure used to take the adverse personnel action."[93]

Plaintiff's argument falls short. His Due Process argument does arise, at least in part, from his termination from UTPA. Termination is the only factual basis he gives to prove that he had been deprived of a Constitutionally-cognizable property interest under the Fourteenth Amendment.[94] Similarly, Plaintiff's termination is essential to his state whistleblower claim, because it fulfills the "adverse action" element of that claim.[95] Thus, both Plaintiff's federal Due Process and state whistleblower claims arise from at least one essential fact—Plaintiff's termination. Consequently, Plaintiff "would ordinarily be expected to try [both claims] in one judicial proceeding,"[96] and the Court has supplemental jurisdiction over the state whistleblower claim.

---

[91] Tex. Gov't Code Ann. § 554.002 (West).

[92] Dkt. No. 11 at p. 33.

[93] Dkt. No. 9. at p. 9.

[94] Dkt. No. 1-12 at p. 616. ("Under the Fourteenth Amendment to the U.S. Constitution, Banik, a professor with a property interest in the continued employment at UTPA due to his tenure, was entitled to minimum due process in connection with the termination of his services . . . .").

[95] *See* Tex. Gov't Code Ann. § 554.002(a) (West) ("A state or local governmental entity may not suspend or terminate the employment of, or take other *adverse personnel action* against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.")

[96] *Gibbs*, 383 U.S. at 725.

IV. <u>National Origin Discrimination Claims</u>

The Court has supplemental jurisdiction over Plaintiff's national origin discrimination claims because they arise—by Plaintiff's own admission—from some of the same operative facts as his federal Due Process claim. In the section of Plaintiff's petition entitled "Constitutional Claims," Plaintiff argues that he was deprived of his job at UTPA without due process specifically because he is East Indian: "Mora, Crown, and Faver *considered the 2008 complaint* [implicating Plaintiff's national origin] against Banik which had been resolved and had no similarity to the current complaint."[97] Plaintiff also notes that "Mora, Crown, and Faver *ignored cultural issues affecting Banik's choice of language as testified by Dr. Edwin LeMaster*, Professor Emeritus."[98] These facts also allegedly gave rise to Plaintiff's national origin discrimination claim under Texas law. In that claim, Plaintiff argues that he was fired because Defendants Mora, Crown, and Faver *considered the 2008 complaint* against him [implicating Plaintiff's national origin], *as well as Dr. Edwin LeMaster's testimony*.[99] Thus, both Plaintiff's federal Due Process and state national origin discrimination claims arise, in part, from the same operative facts—what materials University officials considered when determining to terminate Plaintiff.

Additionally, both Plaintiff's federal Due Process and national origin discrimination claims arise in essential part from the fact that he was *terminated from UTPA*. Plaintiff's termination fulfills the property deprivation element of his Due Process claim, as well as the "discharge" basis for his national origin discrimination claim. Because of this factual overlap, especially when considered in conjunction with the other overlap specified above, Plaintiff

---

[97] Dkt. No. 1-12 at p. 617.
[98] *Id*. at p. 618.
[99] Dkt. No. 1-12 at pp. 614–615.

would ordinarily be expected to try both claims in one judicial proceeding, and the Court has supplemental jurisdiction over the state national origin discrimination claim.

V.  Tortious Interference Claim

The Court also has supplemental jurisdiction over Plaintiff's state tortious interference claim, which arises—according to Plaintiff's express admission—from Defendant Nelson's intentional recommendation to the UT Board of Regents that Plaintiff be fired, and because Plaintiff was subsequently fired.[100] However, this same recommendation by Defendant Nelson is one of Plaintiff's factual bases for his federal Due Process claim—specifically because the termination recommendation allegedly did not conform to Regent's Rule 31008 concerning the termination of faculty members.[101] Moreover, both Plaintiff's federal Due Process and state tortious interference claims arise in essential part from the fact that Plaintiff was terminated from UTPA. The termination fulfills the property deprivation element of the Due Process claim, and the damages element for tortious interference. In short, two of the same facts give rise to plaintiff's state tortious interference and federal Due Process claims—Nelson's termination recommendation, and Plaintiff's termination. Because of this factual overlap, Plaintiff would ordinarily be expected to try both claims in one judicial proceeding, and the Court has supplemental jurisdiction over the state national origin discrimination claim.

VI. Defamation Claims

The Court has supplemental jurisdiction over Plaintiff's defamation claim against Defendant Ybarra. Plaintiff is suing Defendant Ybarra because she allegedly made defamatory statements about Plaintiff in her written complaint to UTPA's Dean of Students, as well as in her oral testimony before a University panel, and because Plaintiff *suffered damages—termination*

---

[100] Dkt. No. 1-12 at p. 602.
[101] *Id*. at p. 620. ("Further, UT System Board of Regents terminated Banik's property interest upon the recommendation of a former UTPA employee, Nelson, in violation of Regents' Rule 31.008.").

*from UTPA—as a result*.[102] Plaintiff's termination is also a factual basis for his federal Due Process claim; it is the wellspring of his property deprivation allegation.[103] Both claims would ordinarily be expected to be litigated together because of this factual overlap. Thus, the Court has supplemental jurisdiction over the state defamation claim against Ybarra.

The Court also has supplemental jurisdiction over Plaintiff's defamation claim against Defendant Tamez. Plaintiff sued Tamez for *submitting an allegedly false written statement to UTPA* that Plaintiff attempted to recruit students to slander Ybarra and intimidated Tamez by poking him repeatedly in the chest.[104] Plaintiff's federal Due Process claim also expressly arises from Defendant Tamez's complaint submission: "Mora, Crown, and Faver considered a *complaint [submitted] by Tamez* which Banik was never given the opportunity to respond to."[105] Moreover, both Plaintiff's state defamation claim and federal due Process claim arise in essential part because Plaintiff was *fired from UTPA*. In the defamation claim, Plaintiff's termination functions as the damages element.[106] In Plaintiff's federal Due Process claim, Plaintiff's termination functions as his property deprivation.[107] Thus, Plaintiff's state defamation claim arises from the same operative facts as Plaintiff's federal Due Process claim, and the Court has supplemental jurisdiction over the state claim.

## III.   CONCLUSION

The procedural defects in Defendants' removal notice do not warrant remand. Moreover, remand is not warranted on the basis of 28 U.S.C. § 1441's unanimous consent requirement because all Defendants consented to removal. That consent was not vitiated by their filing

---

[102] *Id*. at p. 605.
[103] *Id*. at p. 618. ("Bankik has a property interest in his continued employment with UTPA and the UT System as a tenured professor . . . .").
[104] Dkt. No. 1-12 at pp. 589–590; 605–606.
[105] *Id*. at p. 618.
[106] Dkt. No. 1-12 at p. 607.
[107] *Id*. at p. 618. ("Bankik has a property interest in his continued employment with UTPA and the UT System as a tenured professor . . . .").

various motions in state court. As for Plaintiff's attempt to remand certain state law claims in a piecemeal fashion, the Court has either original or supplemental jurisdiction over each of Plaintiff's claims. The Court declines to exercise its discretion to remand any of the state claims because it is in the best interest of judicial economy and fairness to entertain them all in one forum. Each of Plaintiff's claims can be traced in essential part to his termination, or the university processes leading to his termination. Plaintiff's numerous and far-reaching legal claims do not change this finding. Accordingly, the Court **DENIES** Plaintiff's remand motion, **GRANTS** Defendants' motion to supplement the record, and **DENIES AS MOOT** Defendants' motion to amend its removal notice to clarify the statutory basis for removal.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 20th day of October, 2016.

_____
Micaela Alvarez
United States District Judge