UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BIMAL K. BANIK, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-00462 |
| | § | |
| ANGEL TAMEZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION

The Court now considers Terence Thompson ("Thompson"), Esmeralda Guerra ("Guerra"), Martha Cantu ("Cantu"), S.J. Sethi ("Sethi"), Robert Nelsen ("Nelsen"), Havidán Rodríguez ("Rodríguez"), Guy Bailey ("Bailey"), Marie Mora ("Mora"), Stephen Crown ("Crown"), Catherine Faver ("Faver"), Paul L. Foster ("Foster"), William Eugene Powell ("Powell"), R. Steven Hicks ("Hicks"), Ernest Aliseda ("Aliseda"), Alex Cranberg ("Cranberg"), Wallace Hall, Jr., ("Hall"), Jeffrey Hildebrand ("Hildebrand"), Brenda Pejovich ("Pejovich"), Robert Stillwell ("Stillwell"), The University of Texas-Pan American ("UTPA"), The University of Texas Rio Grande Valley ("UTRGV"), and The University of Texas System's ("UT System") (collectively "Defendants") motion to dismiss on the pleadings.[1] The Court also considers Bimal K. Banik's ("Plaintiff") response,[2] as well as Plaintiff's embedded motion for leave to amend any improperly pled claims.[3] After duly considering the record and authorities, the Court **GRANTS** in part and **DENIES** in part Defendants' dismissal motion and Plaintiff's embedded motion for leave to amend as follows.

---

[1] Dkt. No. 53.
[2] Dkt. No. 60.
[3] *Id*. p. 40.

## I.   INTRODUCTION

### A.   *Factual & Procedural Background*

As a preliminary matter, the Court must look beyond the pleadings to make sense of this case, which involves numerous defendants and scores of claims. However, insofar as the Court looks beyond the pleadings, it does not assume these facts to be true for purposes of its pleadings-based dismissal analysis. The Court relies solely on 12(b)(6)-pertinent information for that portion of the opinion.

Plaintiff was a tenured chemistry professor at UTPA.[4] One of his chemistry students, Amanda Ybarra ("Ybarra"), filed a complaint with UTPA on February 1, 2013, alleging that Plaintiff had made inappropriate comments to her amounting to misconduct.[5] Plaintiff allegedly met with one of his other chemistry students—Angel Tamez ("Tamez")—on March 22, 2013, and hatched a scheme to slander Ybarra by getting her classmates to call her a stripper and pornography star.[6] Tamez allegedly recorded the aforementioned scheme on his cellular phone.[7] Plaintiff alleges that Tamez's recording also included conversations between Plaintiff and someone other than Tamez.[8]

Tamez then met with Guerra and Cantu to discuss what had happened.[9] Guerra was the Equal Employment Opportunity ("EEO") officer at UTPA,[10] and she began the investigation into Ybarra's complaint against Banik.[11] Cantu was the UTPA Vice President of Student Affairs.[12] It

---

[4] Dkt. No. 1-12 p. 585.
[5] *Id.* pp. 588–589.
[6] *Id.* p. 594 ("Before the UTPA panel, Tamez stated [Plaintiff] told him Ybarra received a 'B' in his class; asked him to help form a group to speak on BANIK's behalf "against" UTPA; asked him and other students to make YBARRA look like a stripper or pornography star.").
[7] *See* Dkt. 1-11 pp. 301; 475.
[8] Dkt. No. 1-12 p. 589.
[9] Dkt. No. 1-9 p. 139.
[10] *Id.* p. 135 ¶ 2.
[11] *Id.* p .136 ¶ 5.
[12] *Id.* p. 138.

appears that during the initial meeting, Tamez described his conversation with Plaintiff, but did not reveal the recording.[13] However, Tamez later disclosed the recording to both Guerra and Cantu.[14]

Thompson—UTPA's Chief Legal Officer and Title IX Administrator during this time—[15] was Guerra's supervisor,[16] and he took over Guerra's investigation into Plaintiff in late March of 2013.[17] During his investigation, Thompson spoke to Tamez, who again recounted his conversation with Plaintiff and disclosed the recording.[18] At some point during the investigation, Thompson asked Sethi to transcribe the recording.[19] Thompson appears to have issued an official investigation report on September 25, 2013, finding that Plaintiff had violated federal law and university policy.[20] This was one of a string of events that would lead to Plaintiff's eventual termination.

Thompson's investigation report was forwarded to Rodríguez, UTPA's Vice President of Academic Affairs.[21] Rodríguez recommended termination to Nelson, then President of UTPA, who then recommended initiation of termination proceedings against Plaintiff.[22] A three-member tribunal—comprised of faculty members Mora, Crown, and Faver[23]—was convened from August 11–13, 2014.[24] This proceeding was adversarial and judicial in nature, involving the submission of evidence, the representation of counsel, and the ability to testify and cross-

---

[13] *Id.* pp. 136; 139.
[14] Dkt. No. 1-11 p. 150; Dkt. No. 1-9 pp. 136; 139.
[15] Dkt. No. 1-9 pp. 130–31 ¶¶ 2–3.
[16] *Id.* p. 131 ¶ 3 ("I also supervised the Title IX coordinator, who was our equal opportunity officer . . . .").
[17] *Id.* p. 132 ¶ 6.
[18] *Id.* p. 131 ¶ 5.
[19] *Id.* p. 141 ¶ 4.
[20] *Id.* p. 132 ¶ 6.
[21] *Id.* p. 115.
[22] *See id.* p. 116; Dkt. No. 1-12 p. 610; Dkt. No. 60 pp. 27–28.
[23] Dkt. No. 1-12 p. 594
[24] *Id.* p. 593.

examine adverse witnesses.[25] Ultimately, the tribunal unanimously recommended termination based upon their findings.[26] The next step of the process was to have the UTPA President recommend termination to the UT Board of Regents ("Regents"). Nelsen did just this on September 15, 2014.[27] Though he had ceased being UTPA's President just thirteen days earlier, he allegedly was delegated the power to issue this recommendation to the Regents by Rodríguez—UTPA's President ad interim at that time.[28]

The Regents (Defendants Foster, Powell, Hicks, Aliseda, Cranberg, Hall, Hildebrand, Pejovich, and Stillwell) then adopted Nelsen's recommendation, and on November 6, 2014, they voted to terminate Plaintiff.[29] Plaintiff was notified of his termination on November 14, 2014.[30] Independently, UTPA was abolished and UTRGV was created by legislative decree.[31] However, Plaintiff's termination did not result from UTPA's abolition.[32] Plaintiff applied for "Phase I" hiring at UTRGV before he learned of his termination,[33] but was denied on the grounds that he had been subject to disciplinary action within the past seven years.[34]

Plaintiff sued Tamez in state court on November 15, 2013,[35] and eventually added twenty-three more Defendants over the course of ten amended petitions.[36] Defendants removed the case on August 8, 2016.[37] This Court dismissed Ybarra from the case on November 1,

---

[25] *See* Dkt No. 53-1. (Regents Rule 31008 governed the tribunal hearing, as well as other events leading to Plaintiff's termination).
[26] Dkt. No. 1-2 p. 12.
[27] *Id*. p. 144 ¶ 6.
[28] *Id*. ¶ 5.
[29] *Id*. p. 118.
[30] *Id*.
[31] Dkt. No. 1-9 p. 117.
[32] *Id*. pp. 117–118 (indicating Plaintiff was notified of his termination in 2014, but UTPA was not abolished until 2015).
[33] Dkt. No. 1-12 p. 595.
[34] *Id*. p. 596.
[35] Dkt. No. 1-6 p. 1.
[36] *See generally* Dkt. Nos. 1-6 – 1-12.
[37] Dkt. No. 1.

2016,[38] and all other remaining Defendants *except* Tamez filed the instant motion to dismiss on March 7, 2017.[39] The Court granted Plaintiff an extension of time to respond, which he did on April 11, 2017, embedding a motion for leave to amend any pleading deficiencies in his complaint.[40] The instant motions are thus ripe for review.

### B.     Housekeeping Matters

Before laying out the legal standard and launching into the legal analysis of the instant motions, there are a few housekeeping items that must be attended to. *First*, the Court observes that Defendants have attached two documents to its dismissal motion that are not otherwise found in the pleadings: Regent's Rules 31007 and 31008.[41] Generally, a court is not allowed to look beyond the pleadings in order to resolve Federal Rule of Civil Procedure ("Rule") 12(b)(6) or 12(c) motions.[42] The "pleadings" include the complaint and answer.[43] Rule 12(d) requires courts to "convert" Rule 12(b)(6) and 12(c) motions into Rule 56 motions for summary judgment if "matters outside the pleadings are [1] presented to and [2] not excluded by the court . . . ."[44] However, a court may take judicial notice of public documents and consider them in its 12(b)(6) or 12(c) analysis without converting the motion into a summary judgment motion.[45]

---

[38] Dkt. No. 24.

[39] Dkt. No. 53.

[40] Dkt. No. 60.

[41] Dkt. Nos. 53-1; 53-2.

[42] *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) ("[T]he court may not look beyond the pleadings in ruling on the [12(b)(6)] motion."); *see also Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) (citing Rule 12(d) for the proposition that both Rule 12(b)(6) and 12(c) motions must be converted to summary judgment motions under certain circumstances when evidence outside the pleadings is presented).

[43] *Bosarge*, 796 F.3d at 440 (citing Rule 7(a)).

[44] Fed. R. Civ. P. 12(d); *Gamel v. Grant Prideco, L.P.*, 625 Fed. Appx. 690, 693 (5th Cir. 2015).

[45] *See e.g. Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("Accordingly, we hold that it was appropriate for the court to take judicial notice, under Rule 12(b)(6), of the PMA the FDA granted to Stryker for marketing its Trident System."); *Doe v. United States*, 2017 WL 1325701, at *5 (5th Cir. 2017), as revised (Apr. 12, 2017) ("In making this [12(b)(6)] determination, we may consider the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Here, Defendants' attachments, Regent's Rules 31007 and 31008, are matters of public record, readily available online,[46] whose existence and content cannot reasonably be disputed. Thus, the Court takes judicial notice of these documents, and proceeds to analyze Defendants' dismissal motion without converting it into a Rule 56 motion for summary judgment.

*Second*, Plaintiff incorporates by reference into his tenth amended complaint various documents attached to previous complaints.[47] He does not specify which complaints. The Court will not go swimming through the two-thousand page state court record to find them, and thus excludes them in the present motion. The Court is cognizant that substantial discovery has already taken place in this case, and that the parties are familiar with many facts outside the pleadings. However, it would be both inappropriate and procedurally awkward to consider numerous facts and documents outside the pleadings for purposes of the present motion; it is not a summary judgment motion.

*Third*, Plaintiff has filed two independent motions for leave to amend. The first motion for leave is embedded within his response to the instant dismissal motion.[48] Entitled "Banik's motion for leave to amend pleadings," the embedded motion states, in part, "[i]f the Court is inclined to dismiss any portion of [Plaintiff's] complaint for failure to state a claim, [Plaintiff] requests leave of court to amend his complaint to cure the alleged pleading deficiencies identified by Defendants."[49] Plaintiff's second motion for leave to amend was filed two weeks later, and attached a proposed amended complaint.[50] Because these two motions for leave are distinct, the Court will address them sequentially and separately, though the Court will also take

---

[46] *See* http://www.utsystem.edu/board-of-regents/rules/31007-tenure; *see also* http://www.utsystem.edu/board-of-regents/rules/31008-termination-faculty-member.
[47] *See e.g.*, Dkt. No. 1-12 p. 591.
[48] Dkt. No. 60 p. 40.
[49] *Id.*
[50] Dkt. No. 62.

a peek into the proposed amended complaint attached to the second motion for leave to assess futility of amendment of certain claims. In the present order, the Court only addresses the first, embedded motion for leave.

Administratively speaking, then, the Court first analyzes the sufficiency of Plaintiff's factual allegations with regard to each of his claims against each Defendant. Whenever the Court finds any particular claim to be insufficiently pled, the Court will then determine whether leave to amend would be appropriate. However, where certain claims are clearly futile for reasons explained in the sufficiency-of-the-pleadings analysis, the Court will not conduct a full motion for leave analysis.

## II. LEGAL STANDARDS

### A. *Rules 12(b)(6) and 12(c)—Dismissal on the Pleadings*

Defendants move for dismissal under Rule 12(b)(6) and Rule 12(c).[51] It ultimately does not matter which is used because the standards governing both are identical.[52] To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[53] This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[54] Courts regard all such well-pleaded facts as true and view them in the light most favorable to the plaintiff.[55] Considered in that manner, factual allegations must raise a right to relief above the speculative level.[56]

---

[51] Dkt. No. 53 p. 1.
[52] *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).
[53] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007), *cert. denied*, 552 U.S. 1182 (2008) (internal quotations omitted).
[54] *Twombly*, 550 U.S. at 555.
[55] *Id.*
[56] *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555).

Pursuant to Supreme Court precedent,[57] courts first disregard from their analysis any conclusory allegations as not entitled to the assumption of truth.[58] Courts then undertake the "context-specific" task of determining whether the remaining well-pled allegations give rise to an entitlement of relief to an extent that is plausible, rather than merely possible or conceivable.[59] The "plausibility" standard requires the complaint to state "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."[60] As the Supreme Court recently clarified, the plausibility standard concerns the factual allegations of a complaint; the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."[61]

B.      Rule 15(a)

Plaintiff moves for leave to amend his complaint under Rule 15(a), which provides for amendment as a matter of course under certain circumstances, and otherwise with the opposing party's written consent or court approval.[62] Here, the opposing party has not consented and amendment as a matter of course is not available. Thus, this Court's approval is required. The Court is bound to "freely give leave when justice requires,"[63] and ought to consider the following factors: "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of the allowance of the amendment, [and 5] futility of the

---

[57] 556 U.S. 662 (2009).
[58] *See id.* at 678–79.
[59] *See id.* at 679–80.
[60] *In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).
[61] *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014).
[62] Fed. R. Civ. P. 15 (a)(1)–(2).
[63] Fed. R. Civ. P. 15(a)(2).

amendment."[64] Generally, leave should be granted absent any of these warning factors, but ultimately, whether to grant leave is up to the Court's discretion.

Here, the Court will address the motion for leave as it pertains to particular claims. However, it is important to note that this suit was first filed in November 2013 and Plaintiff has amended ten times already. Certainly, it appears that Plaintiff has not been diligent in insuring the propriety of his claims, thus demonstrating undue delay and dilatory motive. This is especially true as there is no explanation given for the delay. Most of the facts which form the basis for these claims all appear to have come to light at least by the time of Plaintiff's termination. Additionally, as early as August 2014, Plaintiff has been on notice that Defendants take issue with the sufficiency of his pleadings.[65]

Also, as already noted, Plaintiff does not provide a proposed complaint; rather he only responsively seeks to "cure the alleged pleading deficiencies identified by Defendants." In other words, Plaintiff expects the Court and Defendants to do his work for him; "figure out what is wrong with my complaint and tell me how to fix it." As already noted, certain Defendants moved for dismissal as early as August 2014, and again since then. Plaintiff's response to date has been simply to amend; sometimes adding new claims, sometimes new Defendants, and sometimes neither. Perhaps in some instances it might be appropriate to specifically instruct a plaintiff as to how to amend, but not so under these circumstances. Nonetheless, the Court further addresses the motion for leave as it proceeds through the dismissal analysis.

---

[64] *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[65] Guerra, Cantu, UTPA, and UT System filed a motion to dismiss arguing the insufficiency of the pleadings.

### III. ANALYSIS

The Court analyzes Plaintiff's claims and Defendants' arguments sequentially, beginning with abstract, general observations and defenses, and subsequently moving to more fact-specific, detail-oriented substantive analysis.

### A. *Cantu, Guerra, and Sethi*

The Court first observes that Plaintiff has failed to sufficiently plead any claims against Cantu, Guerra, and Sethi. Plaintiff's bare-bones allegations against them are as follows:

- Tamez told Martha Cantu, a UTPA employee, that he may have committed a crime.[66]

- Terence Thompson, Esmeralda Guerra, Cantu, and S.J. Sethi solicited Tamez to disclose the intercepted communication.[67]

- Tamez disclosed the recording to Thompson, Guerra, Cantu, and Sethi.[68]

- Tamez, Thompson, Guerra, Cantu, and Sethi violatied § 16.02 of the Texas Penal Code.[69]

Although Plaintiff levies multiple claims against Cantu, Guerra, and Sethi, Plaintiff adds no other facts as to these three. These aforementioned statements are conclusory and uninformative, and do not establish that any claims made against Cantu, Guerra, and Sethi are plausible. Thus, Plaintiff has failed to state any claims against these Defendants.

In light of the fact that all of Plaintiff's claims derive from the Tamez recording, the original subject of this suit, and considering that even three years after suit was first filed, the facts as to these three Defendants are wholly missing from the complaint, the Court **DENIES** leave to amend against Cantu, Guerra, and Sethi. The Court finds that there has been undue delay and dilatory motive—Cantu and Guerra were added in June 2014; Sethi in April 2015;

---

[66] Dkt. No. 1-12 p. 589.
[67] *Id.*
[68] *Id.*
[69] *Id.*

repeated failure to cure deficiencies—the claims have remained basically the same through several amendments; and futility of amendment as even the proposed complaint would not survive dismissal. Thus, the Court **DENIES** leave to amend as against Cantu, Guerra, and Sethi and **DISMISSES** all claims against these Defendants.

B.    *Election of Remedies and Defendants Thompson, Rodríguez, and Nelsen*[70]

Plaintiff also brings certain common law and statutory claims against Thompson, Rodríguez, and Nelsen (among others).[71] Defendants contend in the present motion that the claims against Thomson, Rodríguez, and Nelsen should be dismissed pursuant to Texas Tort Claims Act ("TCA") § 101.106(f).[72] Section 101.106 is entitled "Election of Remedies," and § (f) is ostensibly designed to prevent plaintiffs from circumventing a state's sovereign immunity by simply suing the state's employees for actions taken within the general scope of their job duties.[73]

Assuming § 101.106(f) is substantive and applies in federal court—existing case law suggests it does[74]—four conditions must be satisfied for dismissal of the individual defendants to be appropriate. They are as follows:

---

[70] The Court does not address the election of remedies argument with regard to Guerra, Cantu, and Sethi because it has already dismissed them.
[71] Dkt. No. 1-12 pp. 598–99.
[72] Dkt. No. 53 p. 7.
[73] Section f states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

[74] *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (treating § 101.106(e), which is substantially similar, as substantive and appropriate in federal court); *see also Aguilar v. Williamson Cty.*, 2011 WL 13137682, at *3 n. 3 (W.D. Tex. Dec. 19, 2011) ("The Court is bound to follow Texas substantive laws on the election of remedies when it comes to state law claims—although the Court is not aware of any Fifth Circuit case holding that 101.106 is substantive rather than procedural, this Court has applied that section in previous cases.") (citing *Smith v. Quintana, et al.*, No. A–10–CA–00778–SS, slip op. at 4 (W.D. Tex. July 11, 2011)).

1.    The Defendant was an employee of a governmental unit,

2.    The claims, if brought against the governmental employer, would fall within the ambit of the Tort Claims Act,

3.    The claims are based on conduct that was within the general scope of the employment, *and*

4.    The Defendant moved for dismissal.[75]

Section 101.106(f) is an affirmative defense, and thus the burden of proof at trial is on the defendant to conclusively establish the four elements.[76] Here, the first element is easily established by Plaintiff's pleading and Defendants have certainly moved for dismissal. Thus, the Court addresses only the second and third elements.

As to the second element, Plaintiff asserts claims based on Texas Penal Code Art. 18.20 and the Civil Practices and Remedies Code Chapter 123, as well as invasion of privacy and tortious interference as against these Defendants. Invasion of privacy and tortious interference claims clearly fall within the TCA.[77] As to the Art. 18.20 and Chapter 123 claims, the Court similarly finds that such actions sound in tort and fall under the TCA. Thus, the second element is clearly established.

The TCA defines "scope of employment" thus: "Scope of employment means [1] the performance *for* a governmental unit of [2] the *duties of an employee's office* or employment and includes being in or about the performance of a task lawfully assigned to an employee by

---

[75] *Skapek v. Perkins*, 2017 WL 655950, at *2 (Tex. App.—Dallas Feb. 17, 2017, pet. filed).
[76] *Id*. ("A defendant moving for summary judgment on the affirmative defense of governmental immunity under section 101.106(f) must conclusively establish that . . . [listing the four essential elements]").
[77] *See Bustos,* 599 F.3d at 458 (Invasion of privacy claim properly dismissed based on TCA); *Muthukumar v. Kiel*, 478 Fed. Appx. 156, 159 (5th Cir. 2012) (Affirming dismissal of tortious interference claim based on TCPC 101.106(f)).

competent authority."[78] There is no requirement that such duties be set out in a job description, rather, it is sufficient if the employee "is discharging the duties generally assigned to [him]."[79]

Plaintiff's tenth amended petition describes Thompson as a licensed attorney and UTPA's Chief Legal Officer when he investigated Plaintiff.[80] It is also clear from Plaintiff's Due Process claim against Thompson that Thompson was fulfilling the duties of the "Chief Academic Officer" as listed in Regent's Rule 31008.[81] Additionally, Defendants' answer identifies Thompson as UTPA's Chief Legal Officer.[82] Plaintiff's pleading also establishes that Rodríguez served in various capacities, including as President of UTPA and UTRGV, at all times relevant to these claims. Generally, Rodríguez is alleged to have been involved in the termination proceeding by way of investigating, as a witness, and by making the recommendation for termination. As to both the Thompson and Rodriguez, the Court finds that each was acting within the scope of his employment at UTPA.

As to Nelsen, the only claim asserted against him is for tortious interference. Although Plaintiff's pleading establishes that Nelsen was President of UTPA when much of this began, the pleadings also allege that Nelsen's employment ended on September 3, 2014. Thus, the pleadings do not establish the third element as to Nelsen.

Based upon the election of remedies provision and the TCA, the Court hereby **DISMISSES** Plaintiff's Art 18.20, Chapter 123, and invasion of privacy claims against Thompson and Rodríguez. As to Nelsen, the pleadings do not establish the he was acting within the scope of his employment when he recommended termination. Thus, the TCA election of remedies provision does not warrant dismissal of this claim against Nelsen.

---

[78] Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5) (West).
[79] *Anderson v Bessman*, 365 S.W.3d 119, 125 (Tex. App.—Houston 2011).
[80] Dkt. No. 1-12 p. 621.
[81] *See* Dkt. No. 53-1 p. 5 § 6.1.
[82] Dkt. No. 1-12 p. 631 ¶¶ 8 & 10.

C.    *Absolute Immunity of Mora, Crown, & Faver*

    i.    ***Legal Standard***

Defendants contend that any federal claims brought against Mora, Crown, and Faver (i.e. the tribunal members) are cut off by absolute immunity.[83] Absolute immunity is a question of law,[84] and "denies a person whose federal rights have been violated by a government official from obtaining any type of remedy, regardless of the conduct."[85] For this reason, the United States Supreme Court has applied absolute immunity "quite sparing[ly]."[86] It is well established that absolute immunity applies to judges,[87] specifically to insulate them from intimidation which might taint their judgment.[88] For the same reason, absolute immunity has been extended to governmental employees with quasi-judicial functions.[89] Absolute immunity is only available to shield governmental employees sued in their individual capacities, but not in their official capacities.[90]

Absolute immunity based upon quasi-judicial function is a two-step inquiry in the Fifth Circuit. The predicate question is whether the defendant's conduct and relationship to the claimant is judicial in nature.[91] This question turns upon the function/role of the defendant, not

---

[83] *Id.* p. 34.

[84] *Orellana v. Kyle*, 65 F.3d 29, 33 (5th Cir. 1995).

[85] *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 634 (5th Cir. 2000).

[86] *O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997) (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)).

[87] *Id.*

[88] *See Butz v. Economou*, 438 U.S. 478, 509 n. 36 (1978) ("It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.").

[89] *Id.* p. 511.

[90] *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000).

[91] *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 224 (5th Cir. 1999) ("We examine the character of a governmental officer's duties and the relationship to the parties when determining whether he is entitled to absolute immunity.").

their title.[92] If so, then "we must weigh the costs and benefits of denying or affording absolute immunity."[93] The Fifth Circuit has articulated six, non-exclusive considerations for courts to countenance when answering these two questions:

1) the need to assure that the individual can perform his functions without harassment or intimidation;

2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

3) insulation from political influence;

4) the importance of precedent;

5) the adversarial nature of the process; and

6) the correctability of error on appeal.[94]

Due to the thorny, fact-specific nature of these factors, the Fifth Circuit has noted that the *Butz* analysis is "less than exact."[95]

### ii. *Application*

The Court first observes that Plaintiff sues Mora, Crown, and Faver in their individual capacities only.[96] Thus, absolute immunity could potentially cover Mora, Crown, and Faver.[97] The only remaining question is whether they are in fact shielded by absolute immunity. The Court now turns to its analysis in light of each *Butz* factor, and concludes that Mora, Crown, and Faver are entitled to absolute immunity.

*Need to assure that the individual can perform his functions without harassment or intimidation*: This factor weighs in favor of absolute immunity. The Tribunal is often tasked with

---

[92] *Thomas v. City of Dallase*, 175 F.3d 358, 362 (5th Cir. 1999).
[93] *Id*.
[94] *Id*.
[95] *Id*.
[96] Dkt. No. 1-12 p. 584.
[97] *See Turner*, 229 F.3d at 483 (noting that absolute immunity in not available to state actors sued in their official capacities).

making findings against and recommending termination of faculty members.[98] Faculty have more to lose than their job; their reputation often hangs in the balance because termination proceedings inevitably involve allegations of serious misconduct. The tribunal's findings and recommendation are thus unavoidably and inherently controversial, by nature inviting litigation from aggrieved parties. The existence of the present case is evidence of this fact.

*Presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct*: This factor weighs heavily in favor of absolute immunity, and ties in closely with the fifth *Butz* factor—adversarial nature of the process. Here, there are a number of safeguards. An accused is entitled to notice of the charges, and an opportunity to be heard before the matter is even presented to the tribunal.[99] An accused is also entitled to timely notice of the names of the tribunal members, as well as the date, time, and place of the hearing.[100] The accused is entitled to representation by counsel, to present evidence including testimony, as well as to confront and examine witnesses.[101] Tribunal members may not include any accuser of the faculty member, and an accused is permitted to challenge tribunal members thought to be biased.[102] The tribunal's findings and recommendation, though usually a necessary condition for termination of employment,[103] are not sufficient. Their findings and recommendation are independently reviewed by the University President and the Board of Regents before termination can occur.[104]

*Insulation from political influence*: This element weighs slightly in favor of absolute immunity. The Fifth Circuit has distinguished between election and appointment. When a

---

[98] Dkt. No. 53-1 p. 1. (Regent's Rule 31008).
[99] *Id*. pp. 2–3 (Regent's Rule 31008, §§ 3–4).
[100] *Id*. p. 2. (Regent's Rule 31008, § 4.6).
[101] *Id*. p. 3 (Regent's Rule 31008, §§ 4.1–4.2).
[102] *Id*. p. 4 (Regent's Rule 31008, § 4.5).
[103] *See id*. p. 2 (Regent's Rule 31008, § 3) (providing for termination without a tribunal's involvement in cases of incompetency or gross immorality).
[104] *Id*. pp. 4–5 (Regent's Rule 31008, §§ 4.7–4.7; § 5).

defendant is elected to his post, he is more likely to be subject to political influence than if he had been appointed.[105] Here, the Tribunal members are appointed by UTPA's President, where faculty input determines in part the pool of candidates he may choose from.[106]

*Importance of precedent*: This element is neutral. Though there is no indication the tribunal members review previous tribunal decisions when coming to new ones, Regent's Rule 31008 dictates the procedures the tribunal must follow. The Fifth Circuit has stated that under such circumstances, "[t]his factor does not meaningfully point in one direction or the other."[107]

*Adversarial nature of the process*: This factor weighs heavily in favor of absolute immunity. Both parties are permitted representation, and can present evidence, as well as confront adversarial witnesses.[108] The tribunal makes findings and recommendations on the basis of this adversarial presentation.[109]

*The correctability of error on appeal*: This factor also weighs in favor of absolute immunity. Regent's Rule 31008 provides for review by UTPA's President of the Tribunal's findings and recommendations.[110] The President is independently capable of preventing termination.[111] If the President agrees with the tribunal's termination recommendation, he forwards all the pertinent documentation to the Regents along with his recommendation.[112] The accused has a right to submit a written response (against the President's termination

---

[105] *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 224 (5th Cir. 1999) ("[T]he record indicates that the school board members were elected, illustrating that they are not insulated from political forces as are appointed governmental officials."); *O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 66 (5th Cir. 1997) ("[M]embers of the Board are appointed by the Governor and are, therefore, to some extent shielded from political influence.").
[106] Dkt. No. 53-1 p. 2 (Regent's Rule 31008, § 4).
[107] *Thomas v. City of Dallas*, 175 F.3d 358, 363 (5th Cir. 1999) ("[A]lthough the URSB's decisions are not guided by URSB precedent, the board is bound by specific standards for evaluating structures set in the Dallas City Code. This factor does not meaningfully point in one direction or the other.").
[108] Dkt. No. 53-1 pp. 2–3 (Regent's Rule 31008, §§ 4.1–4.5).
[109] *Id*. p. 4 (Regent's Rule 31008, § 4.6).
[110] *Id*. (Regent's Rule 31008, § 4.7).
[111] *Id*.
[112] *Id*.

recommendation) to the Board of Regents.[113] With or without a response, the Regents may reject the President's termination recommendation.[114]

In sum, holistic consideration of the *Butz* factors suggests that Mora, Crown, and Faver's duties as members of the Tribunal were quasi-judicial in nature, and that the benefits of absolute immunity outweigh its associated costs in this context. Thus, Mora, Crown, and Faver are entitled to absolute immunity from Plaintiff's federal claims against them. Plaintiff's Fifth and Fourteenth Amendment claims,[115] as well as his federal wiretapping claims,[116] are **DISMISSED WITH PREJUDICE** insofar as they are alleged against Mora, Crown, and Faver. Because these claims are absolutely barred against Mora, Crown, and Faver, leave to amend these claims against these Defendants would be futile, and is accordingly **DENIED**.

D.      *Wiretapping Claims*

Plaintiff advances his wiretapping allegations using three vehicles for relief: (1) Article 18.20, § 16 of the Texas Code of Criminal Procedure ("TCCP"), (2) Chapter 123 of the Texas Civil Practice and Remedies Code ("TCPRC"), and (3) the Federal Wiretap Act, 18, U.S.C. § 2515. The Court addresses each in turn.

i.      ***Article 18.20, § 16 of the Code of Criminal Procedure***

Plaintiff brings a claim against Rodríguez, Thompson, Guerra, Cantu, and Sethi pursuant to Article 18.20 ("Art. 18.20"), § 16 of the TCCP. While the Court has dismissed Plaintiff's claims against these Defendants, the Court will nonetheless set out its alternative basis for dismissal.  Art. 18.20 §16(a) states:

A person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this article, *or in violation of Chapter 16, Penal Code*, has

---

[113] *Id.*
[114] *Id.* p. 5 (Regent's Rule 31008, § 5).
[115] Dkt. No. 1-12 p. 616.
[116] *Id.* p. 625.

18/ 54

a civil cause of action against any person who intercepts, discloses, or uses or solicits another person to intercept, disclose, or use the communication  . . . .[117]

Plaintiff specifically alleges a violation of Art. 18.20 § 16 via a violation of Chapter Sixteen, § 16.02[118] of the Texas Penal Code ("TPC").[119] TPC § 16.02 provides, in pertinent part, that "[a] person commits an offense if the person . . . intercepts . . . [an] oral . . . communication . . ." or if a person intentionally discloses or uses such interception knowing or having reason to know it was obtained in violation of this chapter.[120]  However, TPC § 16.02 further provides an affirmative defense if "the person is a party to the communication."[121] Section 17 of Art. 18.20 in turn provides that this article does not apply to conduct that is an affirmative defense under TPC §16.02(c).

Plaintiff's pleadings do not indicate that any of these Defendants have been criminally prosecuted or convicted under § 16.02 of the TPC. Thus, the Court cannot assume a violation of §16.02. Plaintiff must, therefore, plead sufficient facts, pursuant to the federal pleading standards, to allege a violation of §16.02. Plaintiff fails to do so. While few cases in Texas address the elements of a private claim pursuant to Art. 18.20, that statute makes it clear that it does not apply to conduct that constitutes an affirmative defense under TPC § 16.02.  The Court recognizes that an affirmative defense must be pled and proven by Defendants. Here, however, because Art. 18.20 expressly excepts claims from its coverage if the defendant was a party to the communication, Plaintiff must factually allege his claim comes within Art. 18.20's prohibition. In other words, Plaintiff must at least allege that Tamez was not a party to the communication. Plaintiff must also allege that Rodríguez, Thompson, Guerra, Cantu and Sethi each knew or had

---

[117] Tex. Crim. Proc. Code Ann. § 16(a), art. 18.20 (West) (emphasis added).
[118] Tex. Penal Code Ann. § 16.02 (West).
[119] Dkt. No. 1-12 p. 590.
[120] Tex. Pen. Code Ann. § 16.02(b)(1) (West).
[121] Id. § 16.02(c)(4)(A) (West).

reason to know the communication was obtained in violation of TPC § 16.02. Plaintiff does no more than present labels and conclusions, thus failing to raise a right to relief above the speculative level.

Plaintiff's motion for leave to amend his Art. 18.20 claim premised upon a violation of TPC § 16.02 is **DENIED** because it would not only be futile, but certainly demonstrates undue delay, dilatory motive, and repeated failure to cure deficiencies. This claim was the original basis for suit, filed in November 2013. It has been re-pled through ten subsequent amendments, with little change.[122] The Art. 18.20 claim against Rodríguez, Thompson, Guerra, Cantu, and Sethi is **DISMISSED WITH PREJDICE**. The Court does not dismiss the remaining Art. 18.20 claim against Tamez, who has not moved for dismissal with regard to this claim in the instant motion.

### ii. *Chapter 123 of the Texas Civil Practice & Remedies Code*

*Plaintiff's Chapter 123 claim is insufficiently plead in its current state*

Plaintiff also brings a civil wiretapping claim under Chapter 123 of the TCPRC against Rodríguez, Thompson, Guerra, Cantu, and Sethi.[123] The Court will similarly address this claim as an alternative basis for dismissal. Unlike Art. 18.20 claims arising from TPC § 16.02, Chapter 123 provides for a civil cause of action without any criminal predicate.[124]

Chapter 123 provides a private cause of action against any person who: "(1) intercepts, attempts to intercept, or employs or obtains another to intercept or attempt to intercept the communication; [or] (2) uses or divulges information that he knows or reasonably should know was obtained by interception of the communication."[125] Interception is defined in part as

---

[122] A careful review of Plaintiff's proposed eleventh amended complaint reveals that Plaintiff adds few factual allegations that Rodríguez, Thompson, Guerra, Cantu, or Sethi violated § 16.02 of the TPC.
[123] Dkt. No. 1-12 pp. 598–99.
[124] *See e.g., Collins v. Collins*, 904 S.W.2d 792, 799 (Tex. App.—Houston [1st Dist.] 1995), writ denied, 923 S.W.2d 569 (Tex. 1996) (case proceeding between private parties); *Stephens v. Dolcefino*, 126 S.W.3d 120, 133 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (same).
[125] Tex. Civ. Prac. & Rem. Code Ann. § 123.002(a)(1)–(2) (West).

"acquisition . . . made without the consent of a party to the communication."[126]  Plaintiff pleads

no facts indicating that Rodríguez, Thompson, Guerra, Cantu, or Sethi themselves intercepted, or

employed another to intercept, any communication as defined by the statue. Thus, a Chapter 123

claim can only stand against these Defendants if Plaintiff pleads that these Defendants (1) used

or divulged a communication obtained by interception, and (2) reasonably should have known

these communications were obtained in a manner proscribed by Chapter 123.

Plaintiff does not plead any facts suggesting that Rodríguez used or divulged any

communication obtained in violation of TCPRC § 123. Moreover, as noted, Plaintiff's

allegations against Guerra, Cantu, and Sethi are so scant that they cannot support *any* claims,

including the Chapter 123 claim. The closest Plaintiff comes is by alleging that Tamez admitted

to Cantu that he may have committed a crime. Nonetheless, Plaintiff also makes clear that Tamez

was a party to at least part of the recording. Plaintiff does not claim that Tamez disclosed why he

though he "may have committed a crime." Thus, there are no facts to suggest these Defendants

knew or had reason to know the recording was in violation of TCPRC § 123. Plaintiff's Chapter

123 claim against Rodríguez, Guerra, Cantu, and Sethi are insufficiently pled in their current

state.

Plaintiff does allege that Thompson, UTPA's Chief Legal Officer who investigated

Plaintiff, made findings and recommended termination "based upon an illegally obtained

recording which Thompson described at the Tribunal hearing as the 'key' piece of evidence."[127]

Thus, Thompson is alleged to have "used" a recorded conversation(s) to make his findings and

recommendation. Here too, Plaintiff fails to plead any facts tending to show that Thompson

knew or had reason to know the recording was obtained by interception. This is significant

---

[126] *Id*. § 123.001(2) (West).
[127] Dkt. No. 1-12 p. 623 (Interestingly, Plaintiff only makes this allegation in connection with his constitutional claims, not with his Chapter 123 claims).

because by Plaintiff's own admission, Tamez was a party to at least some of the recording. The complaint does not allege sufficient facts that the recording Thompson "used" was obtained by interception. Without more information, it is not possible to determine whether Thompson should have known the conversations were obtained in a manner proscribed by Chapter 123. Thus, Plaintiff has failed to sufficiently plead any Chapter 123 claim. The only remaining question is whether leave to amend should be granted for any reason.

*Leave to amend*

The Court will not grant leave to amend Plaintiff's Chapter 123 claims against Rodríguez, Thompson, Guerra, Cantu, and Sethi. Amendment is not warranted due to Plaintiff's failure to cure his pleading deficiencies by previous amendment. Plaintiff's first amended complaint levied Chapter 123 claims against Thompson, Guerra, and Cantu.[128] In turn, these particular Defendants moved for dismissal on the pleadings under Texas Rule of Civil Procedure ("TRCP") 91(a), the state counterpart to Rule 12(b)(6). Notably, Texas courts countenance Rule 12(b)(6) case law when making TRCP 91(a) determinations.[129] Thompson, Guerra, and Cantu specifically pointed to Plaintiff's pleading deficiencies to argue why the essential elements of a Chapter 123 claim had not been alleged against them.[130]

Plaintiff responded by amending his complaint—nine times.[131] For reasons already stated above, Plaintiff has nevertheless failed to plead enough facts to state a Chapter 123 claim against Rodríguez, Thompson, Guerra, Cantu and Sethi. For this reason, Plaintiff's motion for leave to amend his Chapter 123 claims against these Defendants is **DENIED**. Moreover, these claims are **DISMISSED WITH PREJUDICE.**

---

[128] Dkt. No. 1-6 p. 19.
[129] *GoDaddy.com, L.L.C. v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. filed).
[130] Dkt. No. 1-7 p. 11.
[131] *Id*. p. 51.

### iii. Federal Wiretapping Act, 18 U.S.C. § 2515

Plaintiff alleges that Rodríguez, Thompson and UTPA violated 18 U.S.C. § 2515 of the Federal Wiretap Act, and requests damages for this violation pursuant to § 2520.[132] Section 2515 generally prohibits the admission of evidence "in any trial, hearing, or other proceeding," which was obtained in a manner defined as unlawful under the Federal Wiretap Act.[133] Section 2520 creates a private civil cause of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter."[134]

As to Plaintiff's § 2515 claim, Plaintiff simply and generally references the "General Facts and Allegations" section of his complaint. Plaintiff wholly fails to set out the particular facts allegedly engaged in by any one of these Defendants which Plaintiff claims are in violation of the Federal Wiretap Act other than by his reference to § 2515. On its face, § 2515 only creates a claim for "receiv[ing] in[to] evidence" an oral communication unlawfully intercepted. Here, Plaintiff does not allege that Rodríguez received unlawfully-intercepted oral communications into evidence in any trial, hearing, or proceeding against Plaintiff. Thus, Plaintiff's § 2515 claim against this Defendant is insufficiently pled.

As for Thompson, Plaintiff alleges that he made "findings against [Plaintiff], including the recommendation that [Plaintiff] be terminated, based upon an illegally obtained recording

---

[132] Plaintiff also levied this claim against Sethi, Guerra, Cantu, Mora, Crown, and Faver, but any discussion of this federal claim is rendered moot by the Court's previous finding also as to these Defendants.

[133] 18 U.S.C.A. § 2515 (West):

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

[134] 18 U.S.C.A. § 2520(a) (West).

which Thompson described at the tribunal hearing as the 'key' piece of evidence."[135] However, Plaintiff admits that Thompson was an investigating officer[136] who submitted his findings to,[137] and testified before[138] the tribunal. There is no indication, however, that Thompson was authorized to receive, or actually received, Tamez's recording into evidence. Because Plaintiff's allegations against each of these Defendants is insufficient to support any § 2515 claim, they are equally incapable of supporting any claim against UTPA. In sum, Plaintiff's § 2515 claims against each Defendant are insufficiently pled.

Leave to amend would be futile as Plaintiff's proposed amended complaint does not add sufficient facts to sustain any § 2515 claim. With regard to Thompson, Plaintiff only clarifies that he submitted a written report embedding content from Tamez's recording.[139] With regard to Rodríguez, Plaintiff clarifies that he testified before the tribunal, recommending Plaintiff's termination based upon content from Tamez's recording.[140] However, Plaintiff does not add any allegations suggesting that Thompson or Rodríguez *received* information into evidence which flowed from Tamez's recording. By extension, no helpful allegations have been added against UTPA.

In sum, Plaintiff has failed to sufficiently plead any § 2515 claim against any Defendant, and leave to amend this claim would be futile. Thus, leave to amend is **DENIED**, and the claim is **DISMISSED WITH PREJUDICE**.

---

[135] Dkt. No. 1-12 p. 623.
[136] *Id*. p. 621.
[137] *Id*. p. 623.
[138] *Id*. p. 622.
[139] Dkt. No. 62-1 ¶ 122.
[140] *Id*. ¶¶ 125–126.

E.      *Invasion of Privacy*

Plaintiff also levies common law invasion of privacy claims against Rodríguez, Thompson, Guerra, Cantu, and Sethi.[141] The Court again addresses this claim as an alternative basis for dismissal. Plaintiff supports this claim solely with his wiretapping allegations. Though Texas recognizes multiple forms of invasion of privacy, each with separate elements, Plaintiff's conclusory, element-reciting allegations indicates he is aiming for an "intrusion upon seclusion" claim.[142] The elements of such a claim are: "(1) an intentional intrusion upon a person's solitude, seclusion, or private affairs or concerns, (2) that would be highly offensive to a reasonable person, and (3) as a result of which the person suffered an injury."[143] Some Texas courts have clarified that the first element—intentional intrusion—requires actual physical intrusion of eavesdropping on another's conversation with the aid of wiretaps, microphones or spying.[144]

However, Plaintiff's pleadings are so poor at this juncture that he has nevertheless failed to state an invasion claim. As previously noted, the factual allegations against Cantu, Guerra, and Sethi are conclusory and minimal, such that it is virtually impossible to determine from the pleadings what part they even play in this case. The Court cannot infer satisfaction of the three invasion elements against them. Moreover, Plaintiff does not allege facts indicating how Rodríguez intentionally intruded upon Plaintiff's privacy in a way that would be highly offensive to a reasonable person. Indeed, Rodríguez's role appears largely, if not exclusively, relegated to recommending Plaintiff's termination to Nelsen,[145] testifying before the Tribunal,[146] serving as

---

[141] Dkt. No. 1-12 p. 598.

[142] *See id.*

[143] *Baugh v. Fleming*, 2009 WL 5149928, at *1 (Tex. App.—Austin 2009, no pet.) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex.1993)).

[144] *See Dickson v. Am. Red Cross Nat. Headquarters*, 1997 WL 118415, at *11 (N.D. Tex. Mar. 10, 1997) (collecting Texas cases).

[145] Dkt. No. 1-12 p. 591.

[146] *Id.* p. 595.

UTPA's Ad Interim President beginning in August of 2014,[147] and facilitating the transition of UTPA faculty to UTRGV.[148] These allegations have nothing to do with wiretapping, or any other form of invasion of privacy.

As for Thompson, it is clear that he came into contact with Tamez's recording at some point.[149] However, Plaintiff alleges that Tamez, not Thompson, was the person to initiate the recording.[150] Even assuming Thompson's contact with Tamez's recording constitutes an invasion of sorts, it is not clear whether the invasion was into Plaintiff's seclusion. Plaintiff does not supply the contents of the recording, except that they included (but were not necessarily limited to) voice conversation between him and someone other than Tamez. Without more information, it is not possible to determine whether the contents of the recording Thompson allegedly intruded into were private. For all these reasons, Plaintiff's invasion claim is improperly pled.

*Leave to amend*

Plaintiff does not seek leave to amend this claim as his proposed amended complaint discards these claims against Rodríguez, Thompson, Guerra, Cantu, and Sethi.[151] Thus, these claims are **DISMISSED WITH PREJUDICE**.

F.    *Constitutional Claims*

Plaintiff, employing 42 U.S.C. §§ 1983 and 1988 as a vehicles for relief, claims that his Fifth, Fourteenth, and First Amendment rights were violated.[152] The Court addresses each in turn.

---

[147] *Id*. p. 617.
[148] *Id*. p. 624.
[149] *Id*. p. 589.
[150] *Id*.
[151] Dkt. No. 62-1 p. 31.
[152] Dkt. No. 1-12 pp. 615–16.

### i. Fifth Amendment

Plaintiff makes Fifth Amendment Due Process claims against various state actors.[153] However, the Fifth Circuit has clarified that Fifth Amendment Due Process claims "pertain[] to federal, not state, actors."[154] None of the Defendants in this case are federal actors. Thus, Plaintiff's Fifth Amendment Due Process claim is improperly plead, cannot be cured with amendment, and is **DISMISSED WITH PREJUDICE**. Plaintiff's motion for leave to amend this claim is **DENIED** because amendment would be futile.

### ii. Fourteenth Amendment Due Process—future employment at UTRGV

To state a claim under § 1983, a plaintiff "must allege [1] the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law."[155] Here, Plaintiff alleges both substantive and procedural Due Process violations stemming from the denial of his UTRGV employment application.[156]

In order to establish either a substantive or a procedural Due Process violation by claiming denial of a property right, Plaintiff "must first establish a denial of a *constitutionally protected* property right."[157] A constitutionally protected property interest arises where there is "a legitimate claim to entitlement as opposed to a mere subjective expectancy."[158] A claim to entitlement arises when a *statute* or *regulation* places substantial limits on the government's

---

[153] *See id*. pp. 618 ("Rodríguez, Bailey, Foster, Powel, Hicks, Aliseda, Cranberg, Hall, Hildebrand, Pejocivh, and Stillwell violated [Plaintiff's] constitutional protection against deprivation of property without due process under the Fifth and Fourteenth Amendments to the United States Constitution . . . .").
[154] *Coleman v. Sellars*, 614 Fed. Appx. 687, 689 (5th Cir. 2015).
[155] *West v. Atkins*, 487 U.S. 42, 48 (1988).
[156] Dkt. No. 1-12 pp. 618–619.
[157] *Vineyard Inv., LLC v. City of Madison, Miss.*, 757 F. Supp. 2d 607, 612 (S.D. Miss. 2010) (emphasis added), aff'd sub nom. *Vineyard Invs., L.L.C. v. The City of Madison, Miss*, 440 Fed. Appx. 310 (5th Cir. 2011).
[158] *See Vineyard Inv., LLC*, 757 F. Supp. 2d at 612 (citing *Skidmore v. Shamrock Ind. Sch. Dist.*, 464 F.2d 605, 606 (5th Cir.1972) (citing *Perry v. Sindermann*, 408 U.S. 593 (1972)).

exercise of its licensing (or permitting) discretion. "No discretion in the official and a reasonable expectation in the citizen are central elements of a protected property interest."[159]

Here, Plaintiff claims he had a property interest in future employment at UTRGV, and that he was deprived of this property interest without due process by Rodríguez, Bailey, Foster, Powell, Hicks, Aliseda, Cranberg, Hall, Hildebrand, Pejovich, and Stillwell.[160] The Court first notes a guiding principle in its analysis. The Fifth Circuit has held that "faculty in the University of Texas system are tenured to their particular component institution[.]"[161] Consequently, Plaintiff's tenure at UTPA did not attach to every component institution within the UT System, including UTRGV. It only attached to UTPA. Thus, Plaintiff has no property interest in employment at UTRGV by virtue of having tenure at UTPA.

Plaintiff supplies three additional reasons he believes he had a property interest in employment at UTRGV. *First*, Plaintiff points without any explanation to Regent's Rule 31007.[162] *Second*, Plaintiff points to language within the Act itself: "[T]he [Regents] shall facilitate the employment at the university created by this Act of as many faculty and staff of [UTPA] as is prudent and practical."[163] *Third*, Plaintiff alleges that Bailey publically stated that "UTPA['s] faculty were being merged into UTRGV."[164] The Court now explains why Plaintiff still has no property interest in employment at UTRGV.

*Regents' Rule 31007*: Section one of Rule 31007 defines "tenure" as denoting "a status of continuing appointment as a member of the faculty at *an institution* of the University of Texas

---

[159] *Hampton Co. Nat. Sur., LLC v. Tunica Cty., Miss.*, 543 F.3d 221, 226 (5th Cir. 2008) (emphasis added) (citing *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005)).
[160] Dkt. No. 1-12 p. 618.
[161] *Tex. Faculty Ass'n v. Univ. of Texas at Dallas*, 946 F.2d 379, 386 (5th Cir. 1991).
[162] Dkt. No. 1-12 p. 619.
[163] *See id*. pp. 618–19 (emphasis added) (citing Act of June 14, 2013, 83rd Leg., R.S., ch. 726, § 5(c), 2013 Tex. Sess. Law Serv. 1846, 1850 (West)).
[164] *Id*.

System."[165] Thus, tenure attaches to one institution at a time. Plaintiff alleges that he was granted tenure at UTPA,[166] but never alleges that he was granted tenure at UTRGV. Nothing else in Rule 31007 so much as hints that his tenure may have attached to UTRGV.

*Specific language within the Act*: Plaintiff also points to the following language from the Act, contending that it vests him with a property interest in future employment at UTRGV: "In recognition of the abolition of [UTPA] and The University of Texas at Brownsville as authorized by this Act, the [Regents] shall *facilitate* the employment at the university created by this Act of *as many* faculty and staff of the abolished universities *as is prudent and practical.*"[167]

This language does not vest Plaintiff with a reasonable expectation of employment at UTRGV because it does not compel the Regents to hire every former UTPA faculty member at UTRGV. Instead, the Regents are only instructed to "facilitate" their transition. Additionally, such facilitation does not attach to every former UTPA faculty member; it only attaches to "as many faculty . . . as is prudent and practical." This last phrase: "as is prudent and practical," is an important operator, strongly indicating that the Regents have *discretion* to determine which former UTPA faculty can or will be hired at UTRGV. The mere existence of this discretion cuts off any claim of entitlement Plaintiff may assert to future employment at UTRGV.[168]

*Bailey's public statement*:  Bailey's alleged statement was just that—a statement. Nothing in the pleadings suggests it carried the force of law, like a statute or regulation would. For this reason alone, Bailey's alleged statement did not vest Plaintiff with a property interest in

---

[165] Dkt. No. 53-2 p. 1. § 1.
[166] Dkt. No. 1-12 p. 585.
[167] *See id*. pp. 618–19 (emphasis added) (citing Act of June 14, 2013, 83rd Leg., R.S., ch. 726, § 5©, 2013 Tex. Sess. Law Serv. 1846, 1850 (West)).
[168] *Hampton Co. Nat. Sur., LLC,* 543 F.3d at 226.

employment at UTRVG.[169] In sum, Plaintiff has no cognizable interest in employment at UTRGV.

Plaintiff goes on to argue that the Regents, Bailey, and Rodríguez extinguished Plaintiff's interest in employment at UTRGV by crafting and implementing a particular procedure/regulation governing the hiring of UTPA faculty at UTRGV.[170] The procedure/regulation requires the UTRGV President to recommend the hiring of UTPA faculty members to the Regents, as long as those faculty members meet certain criteria. Plaintiff alleges that the language contained within these criteria are vague, undefined, and therefore invalid.[171] However, as already discussed, Plaintiff had no interest in employment at UTRGV (which the procedure/regulation in question governs). Thus, the procedure/regulation could not have deprived him of such an interest.

In sum, Plaintiff has failed to state a substantive or procedural Due Process claim grounded in an employment interest at UTRGV. Amendment would be futile as Plaintiff adds nothing meaningful in his proposed amended complaint to support a property interest in employment at UTRGV.[172] Accordingly, the Court **GRANTS** Defendants' motion to dismiss on the pleadings as to this particular claim, **DENIES** Plaintiff's motion for leave to amend, and **DISMISSES** the claim **WITH PREJUDICE.**

---

[169] *Id.*

[170] Plaintiff's referenced document is readily available online. *See* https://www.utsystem.edu/sites/default/files/news/assets/utrgv-tenured-tenure-track-hiring.pdf.

[171] Dkt. No. 1-12 p. 620.

[172] *See* Dkt. No. 62-1 ¶ 353. Plaintiff's proposed amended complaint only adds a statement by Texas state Senator Judith Zaffirini indicating that UTRGV is a merger of UTPA and the University of Texas at Brownsville. However, this statement, just like Bailey's alleged statement, does not have the force and effect of law, and thus does not vest Plaintiff with a property interest in employment at UTRGV.

### iii. Fourteenth Amendment Due Process—continued employment at UTPA and UT System

Plaintiff also claims that he was deprived of his employment at UTPA and UT System-without procedural[173] or substantive[174] Due Process. Plaintiff's Due Process claims are levied against Thompson (UTPA Chief Legal Counsel and investigative officer); Rodríguez, Bailey, and Nelsen (UTPA and UTRGV leadership); and Foster, Powell, Hicks, Aliseda, Cranberg, Hall, Hildebrand, Pejovich, and Stillwell (the Regents).[175]

The Court first reiterates that Plaintiff's tenure only attached to UTPA.[176] Thus, Plaintiff's Due Process claims must fail insofar as they are premised upon the deprivation of a property interest in employment at UT System generally, as opposed to UTPA specifically. The Court now turns to its analysis.

*Procedural Due Process*: A prima facie procedural Due Process claim has two elements. *First*, the claimant must identify a cognizable life, liberty, or property interest, and then show that "governmental action resulted in a deprivation of the interest."[177] *Second*, the claimant must establish that he was deprived of the identified interest without due process.[178] Though the precise contours of minimum due process depend upon the situation, it generically consists of notice and an opportunity to respond.[179]

Here, Plaintiff has satisfied the first element of his due process claim—deprivation of a cognizable interest—because as a tenured professor, he alleges that UTPA deprived him of

---

[173] Dkt. No. 1-12 p. 616.
[174] *Id.* p. 619 (noting that the termination of Plaintiff's alleged property interest was arbitrary and capricious); *Id.* p. 620 (again noting that termination proceedings were arbitrary and capricious); *Id.* p. 621 (alleging that Thompson's investigation was "intentional or reckless, thereby shocking the conscience").
[175] Plaintiff also levies this claim against Mora, Crown, and Faver, but any discussion of them is rendered moot by the Court's previous finding that they are entitled to absolute immunity.
[176] *Tex. Faculty Ass'n*, 946 F.2d at 386.
[177] *Richmond v. Coastal Bend Coll. Dist.*, 883 F. Supp. 2d 705, 713 (S.D. Tex. 2012) (citing *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)).
[178] *Id.*
[179] *Id.* (citing *Finch v. Fort Bend Ind. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003)).

continued employment at UTPA.[180] The only remaining question is whether UTPA afforded

Plaintiff the process he was due before terminating him. The Fifth Circuit in *Levitt* specified

what process must be afforded before a university may terminate a tenured professor for

cause.[181] Minimum due process requires:

1. That the faculty member "be advised of the cause for his termination in sufficient detail so as to enable him to show any error that may exist;"[182]

2. That the faculty member "be advised of the names and the nature of the testimony of the witnesses against him;"[183]

3. That the faculty member be given "a meaningful opportunity to be heard in his own defense within a reasonable time;"[184] and

4. That the faculty member be afforded "a hearing before a tribunal that possesses some academic expertise and an apparent impartiality toward the charges."[185]

Importantly, the *Levitt* Court stated that "the Constitution, not state law, defines the minimum

process due."[186] Moreover, the Supreme Court has stated that "once it is determined that the Due

Process Clause applies, the question remains what process is due. The answer to that question is

not to be found in [state law]."[187]

Thus, state law cannot add to the constitutional minimum, and the mere violation of state

law or failure to comply with university procedure with regard to proceedings against the faculty

member is not a per se deprivation of constitutional due process.[188] Instead, state law violations

only translate into constitutional deprivations when the conduct at issue *effectively* denies

---

[180] *See* Dkt. No. 1-12 p. 596.
[181] *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1225 (5th Cir. 1985).
[182] *Id*. p. 1228.
[183] *Id*.
[184] *Id*.
[185] *Id*.
[186] *Id*. p. 1233.
[187] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).
[188] *Id*.

minimum due process—as articulated in *Levitt*—or effects some independent constitutional deprivation.[189]

The Court finds it helpful at this juncture to remind the reader of the general process afforded to Plaintiff before he was terminated, drawing from Plaintiff's own description of the process. First, Rodríguez recommended termination to UTPA President Nelsen;[190] Nelsen determined that termination proceedings should be initiated pursuant to Regent's Rule 31008;[191] before termination proceedings actually began, Nelson notified Plaintiff that Plaintiff had the right to meet with Nelson to explain himself, as well as an opportunity to respond in writing to the allegations;[192] Plaintiff, in turn, responded to the allegations through legal counsel, claiming he was being retaliated against;[193] the tribunal hearing was held from August 11–13, 2014;[194] the tribunal, after considering evidence, recommended termination to Nelsen;[195] who in turn, recommended termination to the Regents;[196] who ultimately decided on November 6, 2014 to terminate Plaintiff.[197]

Because a prima facie procedural Due Process claim necessitates a showing that due process was not afforded somehow, it is incumbent upon Plaintiff to specify in his pleadings the manner in which the process leading to his termination was deficient. Here, Plaintiff claims he was not afforded due process for a plethora of reasons, most of which can be boiled down to an

---

[189] *Levitt*, 759 F.2d at 1230 ("The additions to the 'constitutional minimum' we referred to in *Ferguson* arise only when the procedures promised are denied in such a manner that the constitutional minimum is itself denied or an independent constitutional deprivation is effected. For example, if a university promised its faculty that it would provide professors two opportunities to challenge decisions to terminate their employment and a professor who relied on that promise forwent the first opportunity to raise his challenge, the university could not deprive him of the second opportunity without violating due process. This would be the case even though the due process clause itself guarantees the professor only one hearing.").
[190] Dkt. No. 1-12 p. 609.
[191] *Id*. p. 610.
[192] *Id*.
[193] *Id*.
[194] *Id*.
[195] *Id*.
[196] *Id*.
[197] *Id*. p. 611.

alleged failure to fully comply with university procedure or state law, or otherwise failure to afford Plaintiff his preferred process.[198] As noted, these alleged failures are not per se Due Process violations. Moreover, none of these alleged failures effectively translate into violations of minimum Due Process, as articulated by the *Levitt* Court. Thus, they do not support Plaintiff's procedural Due Process claim.

Only three of Plaintiff's allegations are colorable and cause the Court to pause. *First*, Plaintiff alleges that Mora, the Tribunal Chair, displayed an apparent partiality towards the charges against Plaintiff: "Mora, the Panel Chair, made rulings based upon how UT System lawyer told her to rule. UT System counsel would whisper, in a not so quiet voice, as to what the ruling should be which was always against [Plaintiff]."[199]

The Court observes that Mora's adverse rulings alone do not indicate bias. Plaintiff fails to explain what Mora was ruling on. Without this information, it is not possible to know whether the rulings outwardly exhibited partiality towards the claims against Plaintiff. Moreover, the fact Mora relied upon advice by a University attorney does not indicate bias. Quite the opposite, it indicates a colorable desire to make rulings according to the law, rather than against it. Whether Mora's rulings were correct is a different question from whether Mora was ostensibly partial with regard to the charges against Plaintiff. The Court also observes that Regent's Rule 31008 expressly provides the tribunal the right to supporting counsel.[200] For these reasons, Plaintiff's

---

[198] *See id*. pp. 617–25 (listing reasons Plaintiff believes due process was not afforded, including: consideration of Tamez's recording, placing time limits on the parties after UTPA had presented most of its case, refusing to swear in witnesses, failing to consider Plaintiff's evidence, permitting Rodríguez to testify at the Tribunal hearing, refusing to grant continuance for Plaintiff to put on a particular judge as a witness, considering a past complaint against Plaintiff, and ignoring cultural issues affecting Plaintiff's choice of words); *see also id*. p. 618 (Mora allegedly concealed the fact she collaborated with Rodríguez on a paper); *id*. p. 620 (Board of Regents considered recommendation of Nelsen, not fully complying with Regents Rule 31008; Board of Regents held their meeting in El Paso, 783 miles from UTPA).
[199] *Id*. p. 594.
[200] Dkt. No. 53-1 p. 2 ("The president may request counsel from the System Administration's Office of General Counsel to advise the hearing tribunal.").

allegation that Mora relied on University counsel when making rulings does not support Plaintiff's Due Process claim.

*Second*, Plaintiff states that the tribunal members "considered the complaint by Tamez which Banik was never given an opportunity to respond to."[201] The "complaint" Plaintiff is apparently referencing was a written statement by Tamez alleging that Plaintiff attempted to recruit him to slander Ybarra.[202] The alleged lack of opportunity appears to pertain to Plaintiff's April 18, 2013 interview with Thompson. Plaintiff asserts he was initially investigated (as a predicate to any tribunal hearing) and interviewed by Thompson, who did not provide Plaintiff a copy of Tamez's written complaint *before* the investigative interview.[203]

The complaint, however, was apparently brought up at the interview. There is no indication Plaintiff was prohibited from responding to Tamez's written complaint at the interview. Instead, Plaintiff only states that he "was not allowed to respond *in writing* to the aforementioned complaint."[204] However, entirely apart from Tamez's written complaint, Tamez testified to the same fact before the Tribunal.[205] There is no indication that Plaintiff was deprived of an opportunity to combat Tamez's testimony during the tribunal hearing. In fact, Regent's Rule 31008 expressly provides the accused faculty member the right to cross-examine witnesses and to testify.[206] For these reasons, Plaintiff's Due Process claim is not supported by his conclusory allegation that he was not given an opportunity to respond to Tamez's complaint.

*Third*, Plaintiff contends that he was deprived of a meaningful opportunity to be heard in his defense because the Regents held their meeting in El Paso, 783 miles from UTPA.[207] This

---

[201] Dkt. No. 1-12 p. 618.
[202] *Id*. p. 590.
[203] *Id*. p. 623.
[204] *Id*. (emphasis added).
[205] *Id*. pp. 594–95.
[206] Dkt. No. 53-1 pp. 2–3.
[207] Dkt. No. 1-12 p. 620.

argument is disingenuous and fails for a few reasons. *First*, Plaintiff fails to allege that he was in any way prohibited from traveling 783 miles to attend the Board of Regent's meeting. The time and money associated with the travel undoubtedly constitute an inconvenience, but without more factual allegations, could not constitute an outright deprivation of the right to meaningfully defend.

*Second*, and more importantly, Plaintiff conveniently side-steps all the opportunities he was given to defend himself prior to the Regent's meeting. Most notably, Plaintiff was afforded a full-fledged opportunity to present his case before the tribunal, with all the evidentiary benefits the tribunal hearing afforded.[208] If the tribunal recommends termination to the President, and the President finds good cause to recommend termination to the Regents, then the accused has the opportunity to submit a response to the Regents.[209] Importantly, however, the Regents make their decision in light of evidence presented in the tribunal hearing, including Plaintiff's own evidence:

> If the allegations are supported by evidence that constitutes good cause for termination, the president may decide to recommend termination to the [Regents]. If so, the president shall forward [1] the findings and recommendations of the hearing tribunal, [2] *the original transcript of the testimony* and [3] *the exhibits* to the [Regents] for its review, along with the president's report.[210]

The Board of Regents' decision is then made on the record presented.[211] Thus, although Plaintiff was 783 miles from the Regents when they voted to terminate him, his evidence was present before them.

---

[208] *See* Dkt. No. 53-1 § 4.1–4.4.
[209] *Id*. § 4.7(b). ("The accused faculty member may, within seven workdays after receiving the president's report, submit a written response to the Board of Regents. The response must be based solely on the evidence of record in the proceeding.").
[210] *Id*. (emphasis added).
[211] *Id*. § 5.

In sum, Plaintiff has not sufficiently pled a procedural Due Process claim with regard to the deprivation of his interest in continued employment at UTPA. This is because he does not provide sufficient facts to suggest, in a non-conclusory fashion, that he was deprived of minimum Due Process as articulated in *Levitt*. Moreover, careful review of Plaintiff's proposed amended complaint indicates that granting leave to amend this claim would be futile. Plaintiff does not add any non-conclusory factual allegations which indicate a deprivation of procedural Due Process as articulated in *Levitt*. Thus, Plaintiff's motion for leave to amend this claim is **DENIED**, and the claim is **DISMISSED WITH PREJUDICE**.

*Substantive Due Process*: To succeed on a substantive Due Process claim in the public employment context, "the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious."[212] In this case, Plaintiff has satisfied the first element of a prima facie substantive Due Process claim because he was deprived of his interest in continued employment at UTPA.[213] The only remaining question is whether that deprivation was "arbitrary or capricious."

The decision to terminate a tenured faculty member is not arbitrary or capricious if reasonable minds could disagree on the propriety of the termination.[214] Instead, a termination decision is only arbitrary or capricious if it was "made without a rational connection between the known facts and the decision or between the found facts and the evidence."[215] Stated differently, the plaintiff "must demonstrate that [an] abuse of power by the state official shocks the conscience."[216]

---

[212] *Lewis v. Univ. of Texas Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011).
[213] *See* Dkt. No. 1-12 p. 596.
[214] *Lewis*, 665 F.3d at 631.
[215] *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999).
[216] *Lewis*, 665 F.3d at 631.

Here, Plaintiff does not allege sufficient facts to indicate that Plaintiff's termination was arbitrary or capricious. The Court first emphasizes that the termination was effectuated by the Board of Regents after a tribunal hearing. Thompson did not terminate Plaintiff, or even make the recommendation to the Regents. Nonetheless, Plaintiff contends that Thompson violated Plaintiff's substantive Due Process rights by conducting a preliminary investigation that "shocks the conscience." To support this contention, Plaintiff alleges the following:

- Thompson failed to provide an accommodation for Plaintiff's alleged hearing impairment at the initial investigatory interview.[217]

- Thompson conducted the interview even though Plaintiff alleged he was ill.[218]

- Thompson did not advise Plaintiff that Plaintiff had the right to counsel for the interview.[219]

- Thompson did not advise Plaintiff of Tamez's complaint before the interview. Thus, Plaintiff was surprised to discuss Tamez's complaint.[220]

- Plaintiff did not have an opportunity to make a written response to Tamez's complaint before the interview.[221]

- Thompson drafted a witness statement for Tamez, but not for Plaintiff.[222]

- Thompson recommended termination based upon allegedly illegally obtained evidence (i.e. Tamez's recording).[223]

Most of these allegations are little more than carefully-crafted nitpickings. Plaintiff does not allege that he brought his hearing condition to Thompson's attention, or that his illness or hearing condition actually affected the interview. But even if the circumstances affected the interview, Plaintiff was still given a full opportunity to respond at the Tribunal hearing.

---

[217] Dkt. No. 1-12 p. 622.
[218] *Id.*
[219] *Id.*
[220] *Id.*
[221] *Id.* p. 623.
[222] *Id.*
[223] *Id.*

Plaintiff's claim that he was not advised of the right to counsel is a non-sequitur as Plaintiff was not entitled to counsel during the interview. Thus, Thompson's failure to inform Plaintiff of such a right could not be arbitrary or capricious. Thompson's failure to inform Plaintiff of Tamez's complaint before the interview (though it may have not fully complied with University policy) is not in and of itself arbitrary or capricious. It may have a reasonable explanation; perhaps Thompson did not want to give Plaintiff the chance to fabricate answers to the interview questions.

Regarding Thompson's choice to draft Tamez's witness statement but not Plaintiff's, it is a far stretch to even suggest that this "shocks the conscious." Tamez, a student, was in a significantly different position from Plaintiff, a tenured professor. Again, however, Plaintiff had the opportunity to fully respond, and testify, at the tribunal hearing. For these reasons, Plaintiff has not sufficiently pled that Thompson's investigation and recommendation to proceed with termination proceedings were arbitrary and capricious. Furthermore, the Court again emphasizes that Plaintiff was terminated by the Board of Regents after a tribunal hearing. Thus, Plaintiff's substantive Due Process claim against Thompson fails.

Plaintiff also contends the Regents promulgated "arbitrary and capricious" UTRGV hiring criteria.[224] It is unclear whether this allegation is meant to support a substantive Due Process claim against the Regents for deprivation of Plaintiff's interest in continued employment at UTPA. Insofar as it does, the Court points out the obvious fact that any hiring criterion governing employment *at UTRGV*, no matter how arbitrary or capricious, could not deprive Plaintiff of an interest he only had at a different university—UTPA.

---

[224] *Id*. p. 624.

Plaintiff also invokes his substantive Due Process claim against Rodríguez and Bailey,[225] though it is unclear whether it is for an alleged deprivation of employment at UTPA or UTRGV:

> Banik had a property interest/right in his employment at UTPA, the UT System, and UTRGV, and the termination of that interest was arbitrary and capricious . . . . Rodríguez and Bailey failed to exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving Banik of his protected property interest. Rodríguez and Bailey abused their power to the extent that it shocks the conscience.[226]

This allegation is itself conclusory and properly ignored. The rest of Plaintiff's complaint does not specify facts from which the Court can infer shocking abuse of professional power.

Plaintiff suggests Rodríguez was prohibited from serving as a UTPA representative at the tribunal hearing under Regents Rule 31008, § 4.4.[227] But even a glance at this Section suggests no such thing.[228] Plaintiff also points out that the tribunal's recommendation, once made, was to be forwarded to the UTPA President, and Plaintiff concludes: "[i]n effect, Rodríguez, serving as UTPA representative at the tribunal hearing and witness, had the tribunal make findings and a recommendation *to himself*."[229]

However, Plaintiff never actually alleges that the tribunal made a recommendation to Rodríguez. Moreover, even if the tribunal recommendation was made to Rodríguez, Rodríguez then surrendered his authority to do anything with it to former President Nelsen, who Plaintiff alleges is the one who actually "recommended to the Chairman of UT System Board of Regents termination of employment."[230] Even assuming this delegation was procedurally improper, it

---

[225] *Id*. p. 619.

[226] *Id*.

[227] *Id*. p. 595.

[228] Dkt. No. 53-1 (Regents Rule 31008, § 4.4) ("Burden to Prove Good Cause. A representative of the institution may appear before the hearing tribunal to present witnesses and evidence in support of the charge against such faculty member, and such institutional representatives shall have the right to cross-examine the accused faculty member (if the faculty member testifies) and the witnesses offered in behalf of the faculty member. The institution has the burden to prove good cause for termination by the greater weight of the credible evidence.").

[229] Dkt. No. 1-12 p. 595 (emphasis added).

[230] *Id*.

does not shock the conscience because Nelson was very recently (thirteen days earlier) UTPA's President, and thus familiar with the allegations against and investigation into Plaintiff.

As for Bailey, Plaintiff's only discernable factual allegation is that he emailed Plaintiff stating the grounds for non-transition to UTRGV—disciplinary action within the past seven years.[231] This fact alone is inert. In sum, it is impossible to conclude from the pleadings that Plaintiff's loss of employment was due to arbitrary and capricious conduct by Bailey and Rodríguez. Thus, Plaintiff's substantive Due Process claim against them is insufficiently plead.

Lastly, Plaintiff levies his substantive Due Process claim against the Regents, stating:

> [T]he decision to terminate Banik's property interest was arbitrary and capricious in light of the only sworn evidence provided to [the Regents] established that Ybarra's complaint against [Plaintiff] was false. Even assuming Ybarra's complaint was true, . . . the allegations therein would not support a good cause finding for termination and no reasonable decision maker would hold otherwise.[232]

Elsewhere, Plaintiff pleads that the tribunal members themselves "refused to swear witnesses."[233] However, Plaintiff does not allege that any requirement existed that only "sworn" evidence be considered, and Due Process does not require such. Here, Rule 31008 provides that the accused faculty member may introduce "all evidence, written or oral, which may be relevant or material . . . ." Rule 31008, however, does not include a requirement that such evidence be sworn. Plaintiff does not contend that the evidence as a whole dictated an outcome favorable to Plaintiff or that in any other respect there was no rational connection between the found facts and evidence. Thus, given the pleadings, the Regent's termination decision cannot be characterized as arbitrary or capricious.

---

[231] *Id*. pp. 595–96.
[232] *Id*. p. 620.
[233] *Id*. p. 617.

Plaintiff makes a great fuss throughout his complaint that the decision to terminate him was based at least in part upon Tamez's allegedly unlawful recording.[234] Even assuming it was unlawful to use the recording against Plaintiff under state law, violations of state law are not per se Due Process violations.[235] Neither are violations of federal law per se Due Process violations. Moreover, Plaintiff has not supplied enough information about the contents of the recording for the Court to infer that it constituted an arbitrary or capricious basis for Plaintiff's dismissal.

Plaintiff also generally argues that his UTPA tenure was taken in an arbitrary and capricious manner since there existed no "good cause," for his termination.[236] However, the good cause standard, prescribed by Regent's Rule 31008,[237] is a state law, and even if Plaintiff was terminated without good cause, that does not mean he was terminated arbitrarily and capriciously for purposes of his substantive Due Process claim. This said, Plaintiff's own allegations establish that he was terminated for allegedly making inappropriate comments to a student[238] and recruiting her classmates to slander her when she made a complaint against him.[239] The decision to terminate Plaintiff on this basis cannot properly be characterized as arbitrary or capricious.

In sum, Plaintiff is under the mistaken impression that the terms "arbitrary and capricious" and "shocks the conscious" are magical terms which breathe life into otherwise lifeless trifles. The Court finds that all of Plaintiff's Fourteenth Amendment Due Process claims are insufficiently pled. A careful review of Plaintiff's proposed amended complaint reveals that amendment would be futile. Plaintiff offers no new allegations which would support his

---

[234] *Id.* pp. 617; 620; 623;
[235] *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1225 (5th Cir. 1985); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).
[236] Dkt. No. 1-12 pp. 591; 592; 596.
[237] Dkt. No. 53-1 §§ 1; 4.4.
[238] Dkt. No. 1-12 p. 588; 594.
[239] *Id.* pp. 590; 594.

substantive Due Process claim. Thus, Plaintiff's motion for leave to amend this claim is **DENIED**, and the claim is **DISMISSED WITH PREJUDICE**.

### iv. First Amendment claim

Plaintiff alleges that his First Amendment rights were violated, but does not specify against whom this claim is directed other than by naming Rodriguez, Nelsen, Thompson, Bailey, the Tribunal, and Regents in his request for damages.[240] Defendants do not move to dismiss Plaintiff's First Amendment claim, but have contended that Mora, Crown, and Faver are entitled to absolute immunity against any federal claims against them, and by implication, against Plaintiff's First Amendment claim. Since the pleadings do not specify the factual basis for this claim against Mora, Crown, and Faver, dismissal of the claim is also warranted on the basis of absolute immunity. Defendants have not moved to dismiss any potential remaining First Amendment claims against other Defendants, and thus, these claims are not dismissed. Because there is no occasion to inquire into the sufficiency of Plaintiff's First Amendment claim,[241] there is no need to grant leave to amend, which was only requested with regard to improperly pled claims.

### G. National Origin Discrimination

Plaintiff levies a national origin discrimination claim against UTPA under § 21.051 of the Texas Labor Code.[242] This claim is also insufficiently pled.

### i. Legal Standard

To establish a national origin discrimination claim in Texas, the plaintiff must establish that, among other things, he "was treated less favorably than a similarly situated . . .

---

[240] *Id*. p. 616.
[241] The Court does not by this imply that the claim in its current form is sufficiently pled.
[242] *Id*. p. 613–615.

employee."[243] Employees are similarly-situated "if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct."[244] Thus, the misconduct of employees who were disciplined "must be of comparable seriousness to those who were not disciplined."[245] Also, the Plaintiff and his fellow employee must have been accused of committing "nearly identical" misconduct,[246] but treated differently nonetheless.

## ii. *Application*

Defendants argue that Plaintiff has failed to plead that he was treated less favorably than any similarly situated employees, and has thus insufficiently pled his national origin discrimination claim.[247] Defendants are correct. As to this claim, Plaintiff contends that at the tribunal hearing, the tribunal chair admitted a 2008 complaint against Banik and that the "tribunal recommended Plaintiff for termination based on the 2008 complaint." Plaintiff provides no other facts regarding this 2008 complaint. Plaintiff then states in a conclusory fashion that he "was treated less favorably than [1] Dr. Constantine Tarawneh, [2] Dr. Luis Materon, and [3] Dr. Hassan Ahmad, all of whom are similarly situated as Plaintiff, and none of whom are East Indian."[248] The Court observes that this is the only reference to Tarawneh and Materon in Plaintiff's entire complaint, and Plaintiff does not explain what their alleged misconduct was, or whether they were terminated.

Plaintiff does explain that Ahmad was accused of sexual harassment and scientific misconduct,[249] and also that he confessed to wiretapping.[250] Plaintiff also suggests that Ahmad

---

[243] *Acosta v. Gov't Emps. Credit Union*, 351 S.W.3d 637, 641 (Tex. App.—El Paso 2011, no pet.) (citing *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005); *Flores v. City of Liberty*, 318 S.W.3d 551, 554 (Tex. App.—Beaumont 2010, no pet.)).
[244] *Acosta*, 351 S.W.3d at 642 (citing *Monarrez*, 177 S.W.3d at 917).
[245] *Id*.
[246] *Id*.
[247] Dkt. No. 53 p. 42 ¶ 82.
[248] Dkt. No. 1-12 p. 615.
[249] *Id*. p. 586.

was not ultimately fired.[251] However, Plaintiff does not allege that Ahmad was also subject to whatever Plaintiff was accused of in the 2008 complaint, or that Ahmad was accused of recruiting his students to slander a classmate to undermine that classmate's sexual harassment complaint. This distinguishes the allegations against Plaintiff and Ahmad, such that they are not "nearly identical." In sum, Plaintiff has not pled sufficient facts to demonstrate that Plaintiff and Ahmad are similarly-situated, and as noted, Plaintiff pleads virtually no facts whatsoever about Tarawaneh and Materon.

For these reasons, Plaintiff's national origin discrimination claim against UTPA is improperly pled. Moreover, leave to amend would be futile, because Plaintiff's proposed amended complaint does not cure the mentioned deficiencies. Thus, Plaintiff's motion for leave to amend this claim is **DENIED**, and the claim is **DISMISSED WITH PREJUDICE**. Plaintiff's unspecified request for "equitable relief"[252] is also **DISMISSED**, its substantive predicate being found meritless.

H.     *Whistleblower Claim*

Plaintiff claims that UTPA and UT System violated § 554.002 of the Texas Government Code, which states: "A state . . . may not . . . terminate the employment of . . . a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority."[253] Texas courts require plaintiffs making this claim to prove that they would not have been fired *but for* the plaintiff's report of unlawful activity.[254] Defendants contend that Plaintiff fails to plead sufficient facts to establish

---

[250] *Id.*
[251] *Id.* p. 590.
[252] *Id.* p. 615.
[253] Tex. Gov't Code Ann. § 554.002(a) (West).
[254] *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000) (citing *Dpt. of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995); *Hurley v. Tarrant County*, 232 S.W.3d 781, 786 (Tex. App.—Fort Worth 2007, no pet.) (describing causation element as a "but for" requirement).

causation.[255] Plaintiff alleges a sequence of events from which he claims but-for causation can be inferred. However the allegations are so vague, and the inferences so attenuated, that the Court cannot *reasonably* infer causation from the present pleadings.

Plaintiff alleges that in June 2012 he discovered that his coworker Ahmad placed a recording device, paid for with UTPA funds, in Plaintiff's office,[256] that Plaintiff reported it to UTPA Police,[257] and that Ahmad ultimately was indicted and pled guilty to criminal wiretapping.[258] Plaintiff also alleges he was thereafter threatened by Assistant Dean Villareal and that John Trant ("Trant"), Dean of the UTPA College of Science and Mathematics, "threatened termination of employment if [Plaintiff] did not withdraw the charges against Ahmad."[259] Plaintiff alleges he never dropped the charges.[260]

Plaintiff next alleges that on October 3, 2013, "[Trant] recommended to Rodríguez . . . that [Plaintiff's] employment be terminated,"[261] initiating a chain of recommendations and events that would end in Plaintiff's termination: Rodríguez recommended termination to Nelsen;[262] Nelsen determined that termination proceedings should be initiated pursuant to Regent's Rule 31008;[263] before termination proceedings actually began, Nelson notified Plaintiff that Plaintiff had the right to meet with Nelson to explain himself, as well as an opportunity to respond in writing to the allegations;[264] Plaintiff, in turn, responded to the allegations through legal counsel, claiming he was being retaliated against;[265] the tribunal hearing was held from August 11–13,

---

[255] Dkt. No. 53 p. 44 ¶¶ 87–89.
[256] Dkt. No. 1-12 p. 607.
[257] *Id.*
[258] *Id.* pp. 608–10.
[259] *Id.* p. 608.
[260] *Id.* p. 609.
[261] *Id.*
[262] *Id.*
[263] *Id.* p. 610.
[264] *Id.*
[265] *Id.*

2014;[266] the tribunal recommended termination to Nelsen;[267] who in turn, recommended termination to the Regents;[268] who ultimately decided on November 6, 2014 to terminate Plaintiff.[269] To support his contention of causation, Plaintiff alleges that along the way, Rodríguez was made "aware," and the tribunal was presented with evidence, "that [Plaintiff] had made a criminal complaint against Ahmad and [Plaintiff] was pressured to drop the charges."[270]

Three issues prevent the Court from reasonably inferring but-for causation from these allegations. *First*, Ybarra and Tamez's complaints came to light in December 2012 and April 2013, respectively. Termination proceedings were only initiated thereafter. Certainly, these complaints and tribunal testimony support an independent basis for Plaintiff's termination. *Second*, Plaintiff himself claims that termination was recommended based on a 2008 complaint against him. This complaint obviously preceded the Ahmad 2012 issues. *Third*, Plaintiff does not allege that any decision-maker in the termination process considered the Ahmad-saga as a basis for Plaintiff's termination. The only allegation even suggesting they were aware of the Ahmad story is Plaintiff's repeated statement that the decision-makers were "presented evidence" of or "became aware" that Plaintiff had a criminal complaint against Ahmad. Plaintiff conspicuously omits who supplied this information and for what purpose, or whether the information was used as a basis for terminating or recommending termination of Plaintiff.

Plaintiff also hints that he was terminated in retaliation for reporting various claims against Trant and Villarreal to the UTPA Police or District Attorney's Office.[271] However, Plaintiff fails to allege any non-conclusory facts suggesting these were a but-for cause of

---

[266] *Id.*
[267] *Id.*
[268] *Id.*
[269] *Id.* p. 611.
[270] *Id.* pp. 609–11.
[271] *Id.* p. 612.

Plaintiff's termination. In sum, Plaintiff's whistleblower claim is improperly pled. Moreover, it would be futile to grant leave to amend this claim, which is left substantively unchanged in Plaintiff's proposed amended complaint.[272] Thus, Plaintiff's motion for leave to amend this claim is **DENIED**, and the claim is **DISMISSED WITH PREJUDICE**.

I.    *Declaratory Judgment*

Plaintiff seeks three declarations under Chapter 37.009 of the TCPRC (the Texas declaratory judgment provision): (1) that UTPA and UT System violated the Texas Constitution by paying for Tamez's representation out of state funds,[273] (2) that UTPA, UTRGV, and UT System deprived Plaintiff of an interest he had in employment UTPA, UTRGV, and UT System without due course of law under the Texas Constitution,[274] and (3) that particular language within S.B. 24 is unconstitutionally vague and therefore void.[275] Defendants move to dismiss the first two requests on the grounds that they are shielded by sovereign immunity.[276]

i.    ***Legal standard***

The Texas Declaratory Judgment Act "is a procedural, not a substantive, provision, and therefore does not apply in federal court."[277] Thus, once a case has been removed, an "action under the Texas Declaratory Judgment Act is construed as one brought under the federal Declaratory Judgment Act ("DJA")."[278] Nonetheless, state entities such as UTPA, UTRGV, and UT System are entitled to sovereign immunity under the Eleventh Amendment absent a voluntary waiver or Congressional abrogation."[279] Waiver will only be found "where stated by

---

[272] *See* Dkt. No. 62-1 pp. 31–39.
[273] Dkt. No. 1-12 p. 601.
[274] *Id*. p. 625.
[275] *Id*.
[276] Dkt. No. 523 p. 15.
[277] *Vera v. Bank of Am., N.A.*, 569 F. App'x 349, 352 (5th Cir. 2014) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)).
[278] *Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 555 (S.D. Tex. Jan. 23, 2015).
[279] *See Sullivan v. Univ. of Tex. Health Sci. Ctr. At Houston Dental Branch*, 217 F. App'x 391, 392 (5th Cir. 2007).

the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."[280]

Sovereign immunity confers two distinct benefits: immunity from suit and immunity from liability.[281] Removing a case to federal court has the effect of killing off one's immunity from suit, though removal does not itself affect one's immunity from liability.[282] Moreover, in the absence of a viable underlying substantive claim, a request for declaratory judgment "is without merit."[283] The Court now turns to its analysis, analyzing the first two declaratory requests together, and the third request separately.

### ii.    *Application*[284]

*The first two declaratory requests*

First, the Court is obliged to analyze Plaintiff's Chapter 37 declaratory requests as federal DJA requests. Moreover, Defendants in this case have waived their immunity from suit by removing to federal court, but the act of removal did not itself waive their immunity from liability. Furthermore, UTPA, UTRGV, and UT System, as arms of the state of Texas, are

---

[280] *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)).

[281] *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 255 (5th Cir. 2005) ("[W]e conclude that the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or vice versa, but that it does not require a state to do so.").

[282] *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) (emphasis added) (the state legislature had expressly abrogated immunity from liability for particular state claims, so the issue of immunity from liability was not before the Court (there was none), only jurisdictional immunity from suit.).

[283] *See e.g.*, *Pajooh v. Harmon*, 82 Fed. Appx. 898, 899 (5th Cir. 2003) (*Miceli v. The Bank of New York Mellon*, 2015 WL 300671, at *8 (W.D. Tex. Jan. 21, 2015); *Marsh v. JPMorgan Chase Bank*, N.A., 888 F. Supp. 2d 805, 815 (W.D. Tex. 2012).

[284] The Court has doubts that Plaintiff has standing to bring his first two DJA requests, though neither party raises this issue. Plaintiff has not identified any particular injury he suffered (distinct from other tax-paying citizens in Texas) which is fairly traceable to the state-financing of Tamez's representation.  Moreover, and with respect to both of Plaintiff's DJA requests, Plaintiff only asks for costs and attorney's fees, but nothing else. Thus, a decision in Plaintiff's favor would not likely redress whatever injuries Plaintiff may have suffered. This alone is an independent basis for dismissal. Nevertheless, the Court proceeds to analyze Defendants' sovereign immunity contentions because the parties have not briefed the standing issue, and also because sovereign immunity is equally dispositive (i.e. results in the same outcome as a dismissal for lack of jurisdiction).

entitled to immunity from liability.[285] No statute expressly waives immunity for unconstitutional expenditures of public funds or for violations of the due-course-of-law provision in the Texas Constitution. Thus, Defendants have immunity from liability and have not waived it.

Importantly, the mere fact that Plaintiff's declaratory requests arise from the Texas Constitution does not itself constitute a waiver of immunity. Waiver based on the Texas Constitution is only applicable to Article I, § 17, which is not at issue in this case. At least one federal court has dealt with the issue in the following manner:

> [T]he Plaintiff claims that the State of Texas, and, consequently Lamar University, have waived sovereign immunity for all claims that are based on the Texas Constitution . . . . At first blush, this statement [from a cited Texas case] would seem to support the assertion that the state has waived sovereign immunity for any claim based on the Texas Constitution. However, this conclusion is simply erroneous. The statement quoted above is made solely in reference to article I, section 17 of the Texas Constitution . . . . It is true that this provision constitutes a limited waiver of sovereign immunity and provides a cause of action against the state if the provision is violated. However, this is the extent of the waiver; *it does not apply outside of this context*.[286]

Consequently, UTPA, UTRGV, and UT System have sovereign immunity from liability, despite the fact that that Plaintiff's declaratory requests are grounded in provisions within the Texas Constitution.

Defendants' immunity from liability shields them from liability against Plaintiff's underlying substantive claims based on the Texas Constitution. Because Defendants are immune from liability with regard to these substantive claims, they are not viable causes of action against UTPA, UTRGV, and UT System. As a result, any declaratory requests which are predicated

---

[285] *See Sullivan v. Univ. of Tex. Health Sci. Ctr. at Houston Dental Branch*, 217 F. App'x 391, 392 (5th Cir. 2007); *see also University of Texas-Pan American v. Valdez*, 869 S.W.2d at 448 (UTPA is governmental unit entitled to sovereign immunity); *Univ. of Tex. Sys. v. Ochoa*, 413 S.W.3d 769 (Tex. App.—Austin, 2012) (UT System is governmental unit entitled to sovereign immunity); *Whitehead v. Univ. of Tex. Health Sci. Ctr.*, 854 S.W.2d 175, 178 (Tex. App. —San Antonio 1993, no writ) (same).
[286] *Idoux v. Lamar Univ. Sys.*, 817 F. Supp. 637, 641 (E.D. Tex. Apr. 7, 1993).

upon them are without merit, and cannot be granted.[287] Thus, Plaintiff's first two declaratory requests are improperly pled. Because sovereign immunity ultimately cuts the legs off the underlying claims, leave to amend would be futile, and is accordingly **DENIED**. Moreover, these declaratory requests are **DISMISSED WITH PREJUDICE**.

*The third declaratory request*

Plaintiff seeks a declaration that language in the Act directing "the board of regents [to] facilitate the employment at [UTRGV] of as many faculty and staff of [UTPA] as is prudent and practical" is "unconstitutionally vague and/or void," and further requests an injunction prohibiting its enforcement.[288] Specifically, Plaintiff argues that the phrases "as many" and "prudent and practical" are unconstitutionally vague.[289] While Plaintiff poses this claim as a violation of his constitutional rights, the Act itself does not implicate any constitutionally protected conduct. Thus, this being a civil statute, it is "unconstitutionally vague 'where no standard of conduct is outlined at all . . . .'"[290]

In addition to making this showing, Plaintiff must also have standing to challenge the constitutionality of the Act. "To establish standing, a claimant must have suffered an injury in fact of a legally protected property interest.[291] In other words, Plaintiff must present evidence of (1) an actual or imminent injury that is concrete and particularized, (2) fairly traceable to the defendant's conduct, and (3) redressable by a judgment in the plaintiff[']s favor."[292]

As noted earlier, Plaintiff's protected property interest was in his tenured position at UTPA. That property interest was terminated on the basis of good cause, independently of S.B.

---

[287] *See e.g., Pajooh*, 82 Fed. Appx. at 899; *Marsh,* 888 F. Supp. 2d at 815.
[288] Dkt. No. 1-12 pp. 522–24.
[289] *Id.* p. 524.
[290] *Ford Motor Co. v. Tex. Dept. of Transp.*, 264 F.3d 493, 509 (5th Cir. 2001) (quoting *Margaret S. v. Edwards*, 794 F.2d 994, 997 (5th Cir. 1986)).
[291] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
[292] *Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 517 (5th Cir. 2014).

24. Even if the Court were to agree with Plaintiff, his termination has *nothing to do with S.B. 24*. Plaintiff would still have lost his tenure at UTPA even if the language at issue in S.B. 24 never existed. Voiding the language at issue would simply leave the Regents without guidance in hiring UTPA staff at UTRGV—a school which Plaintiff has no cognizable interest in.

Because he had no interest in employment at UTRGV, Plaintiff cannot show that he suffered an injury in fact as a result of the enforcement of the allegedly vague hiring directive. Plaintiff, therefore, has no standing to challenge the hiring directive provision of the Act. Further, Plaintiff cannot satisfy his burden of proving that a judgment declaring that portion of the Act unconstitutionally vague and/or void would redress his alleged injury. Such a declaration would not provide Plaintiff a tenured position at UTRGV. The Court notes that "[r]emedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary."[293] As a result, Plaintiff has no standing, and accordingly, Plaintiff's vagueness claim and accompanying declaratory and injunctive request is **DISMISSED WITH PREJUDICE.** Leave to amend would be futile and is accordingly **DENIED.**

IV. **HOLDING**

The Court's holdings are as follows concerning all remaining Defendants except Tamez:

- *Cantu, Guerra, Sethi*: All claims against these Defendants are **DISMISSED WITH PREJUDICE,** and leave to amend any claims against them is **DENIED.** Cantu, Guerra, and Sethi are each dismissed entirely from this case.

- *Mora, Crown, Faver*: All federal claims against Mora, Crown and Faver are **DISMISSED WITH PREJUDICE**, and leave to amend is **DENIED.** They are entitled to absolute immunity and are dismissed entirely from this case.

- *Tortious Interference*: Dismissal is **DENIED** on the tortious interference claim against Nelsen, because dismissal is solely predicated on the basis of election of remedies, which the Court cannot determine is proper based solely on the live

---

[293] *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16 (1971).

pleadings at this stage. Any request for leave on this claim is **DENIED AS MOOT**.

- *Article 18.20 Wiretapping*: This claim is **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED**.

- *Chapter 123 Wiretapping*: This claim is **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED**.

- *Federal Wiretapping*: This claim is **DISMISSED WITH PREJUDICE** and leave to amend it **DENIED**.

- *Invasion of Privacy*: This claim is **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED**.

- *First Amendment*: Plaintiff does not make clear who this claim is brought against. Defendants did not move to dismiss this claim, though the Court finds that it should be dismissed against Mora, Crown, and Faver, as they are protected by absolute immunity.

- *Fifth Amendment Due Process*: This claim is **DISMISSED WITH PREJUDICE**, and leave to amend is **DENIED**.

- *Fourteenth Amendment Substantive and Procedural Due Process*: These claims are **DISMISSED WITH PREJUDICE** and Leave to amend is **DENIED**.

- *National Origin Discrimination*: This claim is **DIMISSED WITH PREJUDICE** and leave to amend is **DENIED**.

- *Whistleblower*: This claim is **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED**.

- *Declaratory and Injunctive Requests*: All such requests are **DISMISSED WITH PREJUDICE** and leave to amend them is **DENIED**.

- *Other Equitable Request*:[294] This request is **DISMISSED** as its substantive predicate is meritless.

In light of these holdings, the following claims remain pending before the Court:

- *Tamez*: state wiretapping claims under Article 18.20 and Chapter 123, a federal wiretapping claim under 18 U.S.C. §§ 2515 and 2520, invasion of privacy, and defamation (slander and libel).

---

[294] Dkt. No. 1-12 p. 615.

- *Nelsen*: tortious interference.

- *First Amendment*: to the extent it is sufficiently pled against Rodriguez, Nelsen, Thompson, Bailey, and the Regents.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 9th day of June, 2017.

_____
Micaela Alvarez
United States District Judge