UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BIMAL K. BANIK, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-00462 |
| | § | |
| ANGEL TAMEZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

The Court now considers Amanda Ybarra's ("Defendant") motion for sanctions,[1] as well as Bimal Banik's ("Plaintiff") response.[2] After duly considering the record and authorities, the Court **GRANTS** the motion in the amount of **$19,957.63**, assessed jointly and severally against William Mount ("Mount"), Katie Klein ("Klein") (collectively "Plaintiff's Counsel"), and the law firm Dale & Klein, LLP (the "Firm"). This order only *further supports* the previous order[3] as against Plaintiff's Counsel, but is separate and independent with regard to the Firm.

## I. BACKGROUND

Plaintiff was a tenured professor at the University of Texas-Pan American ("UTPA") and was fired in part due to a complaint lodged against him by one of his students—Defendant. Plaintiff sued various individuals in state court who were involved in his termination.[4] Among these individuals was Defendant, whom Plaintiff claims defamed him by making false statements that ultimately led to his termination.[5] Plaintiff amended his petition ten times in state court, and

---

[1] Dkt. No. 42.
[2] Dkt. No. 49.
[3] Dkt. No. 78.
[4] *See* Dkt. No. 1-7 p. 73.
[5] *Id*. pp. 83–85.

named Defendant in the third amended petition[6] and subsequent pleadings. Defendant filed a motion to dismiss in state court which was never adjudicated by that court.[7] Eventually, the case was removed to federal court.[8]

Plaintiff moved for remand,[9] but the Court denied the motion.[10] Defendant thereafter filed a motion to set a hearing on the dismissal motion she filed in state court,[11] and Plaintiff opposed the motion and filed a response.[12] This Court granted Defendant's dismissal motion on the briefing, thus mooting the need for a hearing on the issue.[13] Three weeks after the Court's opinion dismissing Defendant, Plaintiff filed a motion to recuse Judge Alvarez from the case,[14] which the Court denied.[15] Thereafter, Plaintiff moved for reconsideration of the Court's order denying remand.[16] The Court denied this motion as well.[17] Then, Plaintiff moved for reconsideration of the Court's order dismissing Defendant,[18] which the Court also denied.[19] Plaintiff thereafter sought to amend his complaint to revive his claim against Defendant.[20] The Court denied leave in this regard.[21] Defendant moved for sanctions[22] and Plaintiff responded,[23] rendering the motion ripe for review. The Court now turns to its analysis.

---

[6] *Id*. p. 73.
[7] Dkt. No. 1-11 p. 294.
[8] Dkt. No. 1.
[9] Dkt. No. 9.
[10] Dkt. No. 23.
[11] Dkt. No. 7.
[12] Dkt. No. 8.
[13] Dkt. No. 24.
[14] Dkt. No. 25.
[15] Dkt. No. 31.
[16] Dkt. No. 32.
[17] Dkt. No. 44.
[18] Dkt. No. 37.
[19] Dkt. No. 56.
[20] *See* Dkt. No. 62-1 ¶¶ 232–240.
[21] Dkt. No. 77.
[22] Dkt. No. 42.
[23] Dkt. No. 49.

## II. DISCUSSION

### A. *Initial Matters*

Defendant requests that Plaintiff's Counsel and the Firm be held jointly and severally liable for whatever attorney's fees, costs, and expenses may be imposed on Plaintiff under the Texas Citizens Participation Act ("TCPA").[24] The Court's recent order held Plaintiff and his lawyers jointly liable for TCPA-based fees, costs, and expenses.[25] Thus, Defendant's request with regard to Plaintiff's Counsel (but not the Firm) has effectively been granted. The Court proceeds to analyze Defendant's sanctions request as a partial, alternative basis for the division of TCPA-based fees, costs, and expenses assessed in its prior order with regard to Plaintiff's Counsel, as well as an independent request for sanctions with regard to the Firm.[26]

Although Defendant ostensibly lays out four separate legal bases for sanctions,[27] the Court views the thrust of Defendant's motion to be that Plaintiff's Counsel allegedly engaged in unreasonable and vexatious litigation tactics.[28] Thus, the Court construes the instant motion as a request for relief under 28 U.S.C. § 1927.

### B. *Legal Standard—28 U.S.C. § 1927*

Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[29]

---

[24] Dkt. No. 42 p. 7.
[25] Dkt. No. 78 p. 20.
[26] *See id*.
[27] *See* Dkt. No. 42 pp. 2–7 (referencing 28 U.S.C. § 1927, a federal court's inherent authority, Texas Rule of Civil Procedure 13, and Texas Civil Practice and Remedies Code § 10).
[28] *Id.* p. 5.
[29] 28 U.S.C.A. § 1927 (West).

Section 1927 is penal in nature, and thus strictly construed to prevent the dampening of legitimate zeal by the attorney.[30] For an attorney's conduct to be considered unreasonable and vexatious, "there [must] be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."[31] If a court makes such a predicate finding, then it must isolate and announce "the sanctionable conduct giving rise to its order,"[32] and then identify which excess costs, expenses, and attorney's fees were "reasonably incurred *because of such conduct*."[33] Sanctions are limited to this figure,[34] but may be imposed jointly and severally upon the lawyer and his/her law firm.[35]

The purpose of § 1927 is to "curb litigation abuses by counsel, irrespective of the merits of the client's claim"[36] because such abuses waste resources.[37] Thus, the focus of § 1927 is the mode, not the merits, of litigation.[38] The Fifth Circuit, approvingly quoting the Fourth Circuit, has aptly pointed out that:

> [A]n attorney who files a meritorious claim and wins a substantial verdict may still be assessed sanctions under § 1927 if, during the case, he multiplies the proceedings . . . unreasonably and vexatiously. Likewise, an attorney who files a meritless claim may not be sanctioned under § 1927 if he does not engage in such conduct. Section 1927 focuses on the conduct of the litigation and not on its merits.[39]

---

[30] *Religious Tech. Ctr. v. Liebreich*, 98 Fed. Appx. 979, 984 (5th Cir. 2004).
[31] *Greer v. Richardson Indep. Sch. Dist.*, 471 Fed. Appx. 336, 339 (5th Cir. 2012) (quoting *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998)).
[32] *Greer*, 471 Fed. Appx. at 339.
[33] 28 U.S.C.A. § 1927 (West) (emphasis added).
[34] *Religious Tech. Ctr.*, 98 Fed. Appx. at 984 ("[C]ounsel may be ordered to pay personally only the 'excess' costs, expenses, and attorney's fees generated by their conduct.").
[35] *See Religious Tech. Ctr.,* 98 Fed. Appx. at 988 n. 30 (imposing § 1927 sanction jointly and severally against the lawyers and their law firm).
[36] *Id.*at 983 (emphasis added).
[37] *Id*. ("Underlying the sanctions provided in 28 U.S.C. § 1927 is the recognition that frivolous appeals and arguments waste scarce judicial resources and increase legal fees charged to parties.") (quoting *Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir. 1995)).
[38] *Id.*
[39] *Id*. (approvingly quoting *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999)).

A court may consider relevant information which speaks to the propriety of § 1927 sanctions, and it is not cordoned off from considering an attorney's actions in other proceedings before a different judge.[40] Nevertheless, a court cannot sanction an attorney specifically for actions taken in a separate proceeding.[41] Courts are otherwise free to make findings and issue sanctions in a reasonable manner, given the context and needs of the case.[42]

C. *Scorched-earth litigation strategy*

The Court can only properly evaluate Plaintiff's Counsel's motivations in taking specific actions or filing specific documents after examining their general litigation patterns. Thus, a recitation of some procedural history is helpful.

(1) Plaintiff's Counsel failed to diligently serve and thus prosecute Defendant, with a lapse of over three years from Defendant's original allegedly defamatory complaint to service of Defendant;[43] a lapse of approximately two and one-half years from Defendant's allegedly defamatory complaint to naming Defendant in the third amended petition;[44] a lapse of over a year and one-half between the last alleged publication and service of Defendant;[45] and over eight months between when Defendant was named in the third amended petition and when she was

---

[40] *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 191 (5th Cir. 2008) ("The district court could consider Baum's conduct in the state court proceedings in determining whether his conduct before the bankruptcy court was undertaken in bad faith or for an improper motive."); *see also Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1417 (5th Cir. 1994) (indicating that distinct proceedings may be considered, but fees and costs can still only be assessed for conduct in the proceeding before the sanctioning court.).
[41] *In Matter of Case*, 937 F.2d 1014 (5th Cir. 1991).
[42] *Ratliff v. Stewart*, 508 F.3d 225, 234 (5th Cir. 2007) ("[l]ike a sliding scale, the degree and extent to which a specific explanation must be contained in the record will vary accordingly with the particular circumstances of the case, including the severity of the violation, the significance of the sanctions, and the effect of the award.") (quoting *Thomas v. Capital Security Services*, 836 F.2d 866, 883 (5th Cir. 1988) (en banc).
[43] *See* Dkt. No. 1-6 pp. 1 & 6. (Plaintiff's original complaint was filed on *November 15, 2013*); *see also* Dkt. No. 1-11 ¶ 12 (Defendant's affidavit, which states: "I was never served with any citation or petition in this lawsuit until *April 28, 2016* . . . .")(emphasis added).
[44] *See* Dkt. No. 1-12 p. 588. (Defendant filed her formal, written complaint against Plaintiff on *February 1, 2013*); *see also* Dkt. No. 1-7 pp. 73 & 89 (Plaintiff's third amended petition naming Defendant was filed on *August 12, 2015*).
[45] *See* Dkt. No. 1-12 p. 593 (establishing that defendant gave testimony to the Tribunal on *August 11, 2014*); *see also* Dkt. No. 1-11 ¶ 12 (Defendant's affidavit, which states: "I was never served with any citation or petition in this lawsuit until *April 28, 2016* . . . .")(emphasis added).

served.[46] The limitations clock only stops running when a claimant diligently prosecutes the defendant, which is often when a defendant is served, not when suit is filed. Consequently, even generously assuming Plaintiff's defamation claim started accruing soon after September 15, 2014, the limitations period had expired some seven months before Defendant was ever served. This, combined with the sheer number of other Defendants, suggests Defendant was named for tactical reasons.

(2) Plaintiff's Counsel amended the live pleading *ten times* while in state court, in the face of multiple dispositive motions by Defendants along the way. This was an ostensible attempt to kill four birds with one stone: *first*, to hail every conceivably Defendant into Court over time; *second*, to heap as many (even frivolous) claims upon them as possible; *third*, to do so in a manner that would nullify pending dispositive motions, thereby wasting Defendants' resources; and *fourth*, to prolong litigation, again wasting Defendant's resources.

(3) Simultaneously, Plaintiff filed a separate action against UTPA and UTRGV asserting a wrongful termination whistleblower claim.

(4) Upon removal, and only after the University Defendants submitted a forty-eight page dismissal motion,[47] Plaintiff's Counsel embedded a motion for leave to amend within the response, without any indication of how the pleading would be improved if leave was granted.[48] This request surely aimed to nullify the University Defendants' dismissal motion, again to waste more of their resources. Moreover, Plaintiff's Counsel was effectively asking the Court to serve as de facto Of counsel, stating: "If the Court is inclined to dismiss *any* portion of [Plaintiff's] complaint for failure to state a claim, [Plaintiff] requests leave of court to amend his complaint to

---

[46] *See* Dkt. No. 1-7 pp. 73 & 89 (Plaintiff's third amended petition naming Defendant was filed on *August 12, 2015*); *see also* Dkt. No. 1-11 ¶ 12 (Defendant's affidavit, which states: "I was never served with any citation or petition in this lawsuit until *April 28, 2016* . . . .").
[47] Dkt. No. 53.
[48] Dkt. No. 60 p. 40.

cure the alleged pleading deficiencies . . . ."[49] Or as the Court interprets the request, "please waste your time doing my job for me."

(5) Thereafter, Plaintiff's Counsel moved again for leave to amend to submit an eleventh amended complaint,[50] this time attaching an eighty-four page proposed complaint, approximately double the size of the previous pleading,[51] and fourteen times the length of the original petition.[52] Besides failing to constitute a short and plain statement of the claims pursuant to Federal Rule of Civil Procedure 8(a), this pleading would have reintroduced the exact same defamation claim against Defendant that this Court dismissed with prejudice approximately six months prior[53] and of which Plaintiff had already sought reconsideration. University Defendants filed a ten-page response,[54] and naturally, the Defendant joined the response.[55]

(6) Plaintiff's Counsel violated a written agreement[56] by refusing to consent to a TCPA hearing in an ostensible attempt to delay resolution of the TCPA dismissal motion, and to self-generate procedural hurdles to Defendant's TCPA defense. Ultimately, Plaintiff's Counsel's refusal resulted in twenty-five pages of needless briefing,[57] including the vast majority of Defendant's seven-page motion to set a hearing,[58] as well as Plaintiff's nine-page response[59] and Defendant's ten-page reply.[60]

---

[49] *Id.* (emphasis added).
[50] Dkt. No. 62.
[51] *See* Dkt. No. 1-12 pp. 583–628 (tenth amended petition was forty-five pages long).
[52] *See* Dkt. No. 1-6 pp. 1–6 (original petition was six pages long).
[53] *See* Dkt. No. 62-1 ¶¶ 232–240.
[54] Dkt. No. 66.
[55] Dkt. No. 67.
[56] *See* Dkt. No. 7-2.
[57] In fact, twenty-six pages of briefing ensued, but one of those pages would have been necessary even if Plaintiff's Counsel agreed to a TCPA hearing to bring that request to the Court's attention.
[58] Dkt. No. 7.
[59] Dkt. No. 8.
[60] Dkt. No. 10.

(7) Plaintiff's Counsel filed a fifteen-page motion to remand,[61] and the University Defendants responded with thirty-seven pages of briefing.[62] Defendant and Defendant Tamez joined in the response.[63] Plaintiff's Counsel then submitted a nine-page response,[64] and the Court issued a nineteen-page opinion denying remand.[65]

(8) Discontent with the Court's ruling, Plaintiff's Counsel submitted a thirteen-page motion to reconsider the Court's order denying remand.[66] Plaintiff's Counsel wasted three pages criticizing the Court on issues wholly unrelated to the remand order, in addition to falsely accusing the Court of not considering Plaintiff's previous briefing.[67] Otherwise, Plaintiff's Counsel rehashed arguments that had already been made. The University Defendants responded to the reconsideration motion with a fifteen-page brief.[68] The Court issued a six-page order denying reconsideration of its remand order.[69]

(9) Discontent with the Court's dismissal of Defendant from this case, Plaintiff's Counsel submitted a twenty-four page motion to reconsider the Court's dismissal order,[70] as well as a subsequent four-page supplement.[71] Defendant responded with a twenty-nine page brief,[72] and the Court ultimately denied the motion with a twelve-page opinion.[73]

(10) Shortly after the Court denied remand and granted Defendant's TCPA dismissal motion, Plaintiff's Counsel submitted an eleven-page motion to recuse this Court from the

---

[61] Dkt. No. 9.
[62] Dkt. No. 11.
[63] Dkt. Nos. 14 & 18.
[64] Dkt. No. 22.
[65] Dkt. No. 23.
[66] Dkt. No. 32.
[67] *Id*. pp. 2–4.
[68] Dkt. No. 34.
[69] Dkt. No. 44.
[70] Dkt. No. 36.
[71] Dkt. No. 52.
[72] Dkt. No. 41.
[73] Dkt. No. 56.

case,[74] and later submitted an amended version.[75] The University Defendants filed a ten-page response,[76] and Defendant joined the response.[77] The Court issued an eight-page opinion denying the recusal motion.[78]

(11) Due to the large number of Defendants named over time in this lawsuit, as well as the even larger number of claims levied against those Defendants, the University Defendants' dismissal motion was (of necessity) forty-eight pages long.[79] Plaintiff's response was forty-two pages long,[80] and this Court's order partially granting dismissal was fifty-four pages long.[81] Of the eighty-plus claims (not even considering declaratory or injunctive requests), only nineteen remained after the dismissal order.[82] Indeed, as the Court's analysis demonstrates, Plaintiff's live pleading (even after ten amendments) was littered with throw-away claims, with no apparent consideration of the attendant elements of certain causes of action, or otherwise, no interest in providing any facts to ground the claims. This speaks to Plaintiff's Counsel's motivations in even filing such claims.

(12) Plaintiff's Counsel's activity in a related case is also relevant. In particular, Plaintiff's Counsel moved for recusal in *Sanders* on the basis that this Court imposed a delayed scheduling order (as it did in this case as well).[83] Instead of consolidating discovery in like-cases and waiting to see which issues still existed after resolution of the pending pleadings-based dispositive motions, Plaintiff's Counsel wished to "conduct[] discovery and marshal[] evidence

---

[74] Dkt. No. 25.
[75] Dkt. No. 27.
[76] Dkt. No. 26.
[77] Dkt. No. 30.
[78] Dkt. No. 31.
[79] Dkt. No. 53.
[80] Dkt. No. 60.
[81] Dkt. No. 74.
[82] *Id*. pp. 53–54.
[83] *Sanders v. Rodrigues et al.*, 7:16-cv-00650, Dkt. No. 12 p. 2.

to make [their] case."[84] This argument is not only silly, as evidence is categorically irrelevant to pleadings-based dispositive motions, but it further exposes Plaintiff's Counsel's true intentions—to bootstrap meritless claims to justify evidentiary fishing expeditions before the Court has an opportunity to determine whether those claims have any merit on the pleadings.

Taken together, Plaintiff's Counsel's past conduct demonstrates a habit of generating waste, drawing out litigation, and filing secondary motions containing condescending language as a form of emotional backlash to this Court's adverse rulings. This general pattern and strategy provides insight into Plaintiff's Counsel's *motivations* when taking specific actions before this Court.[85] The Court now turns to those specific, sanctionable actions.

### i. *Motion to reconsider Defendant's dismissal*

The Court finds that given the procedural history of this case, this secondary motion was filed with bad faith and improper purpose, namely, to extend litigation and cause waste. Thus, Plaintiff's Counsel and the Firm are liable under § 1927 for bringing about **$5,408.00**[86] worth of wasted briefing.

### ii. *Depositions*

Almost immediately after Defendant was dismissed, when the only remaining issue was attorney's fees, Plaintiff's Counsel insisted upon Defendant's and her attorney's depositions and also sought document production pertaining to the issue of attorney's fees. Plaintiff refused to

---

[84] *Id.*
[85] *See Travelers Ins. Co.*, 38 F.3d at 1417–18 (5th Cir. 1994) (indicating that an attorney's actions in distinct proceedings may be considered to deduce bade faith or improper motive in the present proceeding).
[86] *See* Dkt. No. 43-1 pp. 8, 9, 11, & 12 (concerning Defendant's briefing in response to Plaintiff's motion for the Court to reconsider its order dismissing Defendant). From page eight, the Court includes entry ten, but reduces the hours from 5.1 to 4.1 due to block billing. From page nine, the Court includes entry one. From page eleven, the Court includes entries three through eight. Entry three is accepted in full. Entry four is modified downward from 3.9 hours to three hours due to block billing. Entry five is accepted in full. Entry six is accepted in full. Entry seven is modified downward from 5.7 hours to five hours due to block billing. Entry eight is accepted in full. From page twelve, the Court includes all computer research expenses from January 19, 2017, because the only research completed that day concerned Defendant's response to Plaintiff's motion for reconsideration of the dismissal order (see page eleven).

agree to any alternative manner of securing such evidence. Rather than limiting the depositions to attorney's fees issues, Plaintiff covered substantive issues, for use in his motion for reconsideration.[87] Plaintiff later claimed "[i]t was unreasonable for [Defendant's attorney] to charge to prepare for and attend the deposition given the trial court's ruling on [Defendant's] motion to dismiss."[88] Plaintiff also included a request for production to Defendant and her attorney for Defendant's college transcript. While Plaintiff was entitled to explore the issue of attorney's fees, Counsel's insistence on depositions, refusal to consider alternative modes of obtaining that evidence, exploration of issues beyond attorney's fees, and request for production of irrelevant matters demonstrates Counsel's abusive tactics intended to harass. This conduct resulted in an additional **$8,935.63**[89] in wasted fees and expenses.

### iii. *Refusal to agree to a TCPA hearing in federal court*

The state court set a hearing on Defendant's TCPA motion to dismiss for July 13, 2016.[90] The parties were still considering settlement at that time, so they agreed in writing to cancel the July 13, 2016 hearing, and to reschedule a TCPA hearing if settlement did not transpire:

> This letter will reflect our agreement to pull down the hearing on [Defendant's] motion to dismiss pursuant to the TCPA . . . while we attempt to finalize a mutually-agreeable resolution of [Plaintiff's] claims against [Defendant] . . . . *If for some reason the parties cannot come to an agreement in the near future, we will reschedule our hearing on the motion to dismiss*.[91]

After it became clear that settlement was not possible, Defendant initiated another TCPA hearing to be held in state court on August 11, 2016.[92] The University Defendants removed the case on

---

[87] Dkt. No. 36; 36-4 pp. 1–9.
[88] Dkt. No. 35 p. 8.
[89] *See* Dkt. No. 29-5 p. 85 (entries five through nine); *Id*. p. 86 (entries one—reduced by 75% and rounded down to $22—four, seven, eight, nine, ten, twelve, and thirteen); *Id*. pp. 86–87 (expenses totaling $477.63).
[90] Dkt. No. 1-4 p. 18.
[91] Dkt. No. 7-2 (emphasis added).
[92] Dkt. No. 7 ¶ 8.

August 8, 2016,[93] and Defendant joined in removal,[94] effectively canceling the hearing in state court on Defendant's TCPA dismissal motion.

After removal, Plaintiff's Counsel refused to agree to any TCPA hearing in federal court, despite the written agreement that "we will reschedule our hearing on the motion to dismiss."[95] Plaintiff's Counsel's only explanation is that "[t]here was no agreement to hold a hearing on the motion to dismiss in [federal] Court."[96] However, this explanation does not comport with the written agreement itself, which does *not* limit the scope of the agreement to state court proceedings.

The proceedings in this case were multiplied by Plaintiff's Counsel's refusal because Defendant was then forced to incur unnecessary legal fees to file a motion to set a hearing on the TCPA motion to dismiss,[97] as well as a reply to Plaintiff's response.[98] Of course, some sort of filing would have been required regardless to bring an agreed request for a hearing to the Court's attention. Nevertheless, if the hearing were agreed to, the filing could have taken up a few sentences and the lesser part of one page, as Defendant would not be required to establish that the TCPA *requires* a hearing, or to counter Plaintiff's opposition with a reply.[99] Because Plaintiff's Counsel refused to agree to a hearing, Defendant incurred otherwise unnecessary attorney's fees in the amount of **$4,762.50**.[100]

---

[93] Dkt. No. 1.
[94] Dkt. No. 14.
[95] Dkt. No. 7-2.
[96] Dkt. No. 49.
[97] *See* Dkt. No. 7.
[98] Dkt. No. 10.
[99] *See id*. ¶¶ 9–10.
[100] *See* Dkt. No. 29-5 pp. 66 & 73. From page sixty-six, the Court includes entries six, seven (cut by one-third—for a total of $1,060—because of block billing), eight, and ten. From page seventy-three, the Court includes entries one, two, three, five (cut by one-half—for a total of $210.00), six, eight, nine, and ten. The sum of these entries is $1,923.00.

This waste was created with improper motive and bad faith. With the exception of a groundless argument for why the written agreement did not apply in federal court, Plaintiff's Counsel provides no explanation in the present briefing for why they refused to agree to a hearing. Given the circumstances, a reasonable explanation is that in contravention of the TCPA's policy,[101] Plaintiff's Counsel wished to delay the Court's ruling on the dismissal motion, thus keeping Defendant in the case as long as possible.

It might be argued that Plaintiff's Counsel was aiming to conserve resources by waiting until their remand motion,[102] which had not yet been filed, was ruled on before resolving the TCPA dismissal motion. This theory, however, is belied by a particular argument contained within Plaintiff's response to the motion for a hearing. Specifically, Plaintiff's Counsel resisted a hearing on the TCPA motion, arguing that any setting would be premature,[103] but simultaneously arguing that the TCPA dismissal motion should be denied for *failure to timely hold a TCPA hearing*.[104] Thus, it appears Plaintiff's Counsel's refusal to agree to a TCPA hearing was, at least in part, an attempt to delay resolution of the dismissal motion, depriving Defendant of her TCPA defense for self-generated and purely procedural reasons—an improper motive.[105] The Court also notes that Plaintiff could have not opposed a hearing yet still opposed the propriety of a TCPA dismissal in federal court. Consequently, Plaintiff's Counsel is liable for an additional **$4,762.50** in attorney's fees under § 1927.

---

[101] *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.004–27.005 (West) (providing expedited procedures for TCPA-shielded Defendants to be dismissed from lawsuits).
[102] Dkt. No. 9.
[103] *See* Dkt. No. 8. p. 8.
[104] *Id*. p. 7.
[105] This goes to Plaintiff's Counsel's *intent*, not the law. The Court is suggesting that Plaintiff's Counsel hoped to procedurally bar Defendants TCPA defense by intentionally delaying its resolution. This is not to say that the TCPA's procedural provisions actually apply in federal court. As noted in previous opinions, the Fifth Circuit has not yet resolved this issue.

### iv. Motion for leave to amend—11th amended complaint

Plaintiff moved for leave to amend his complaint an eleventh time[106] in response to the University Defendant's forty-eight page dismissal motion.[107] Attached to the motion for leave to amend was a proposed eleventh amended complaint which would have reintroduced a defamation claim against Defendant[108]—the same defamation claim this Court dismissed *with prejudice* approximately six months prior.[109] There are only two explanations. Plaintiff's Counsel was either acting carelessly or intentionally. If they were acting carelessly, then they were disregarding a duty they owe to the Court—not to needlessly waste its valuable time. The Court also notes that Plaintiff's Counsel has represented to the Court that all pleadings are specifically reviewed by a partner of the Firm before filing.[110] If Plaintiff's Counsel were acting intentionally, then they were acting in bad faith to force Defendant to relitigate a dead claim. In either case, Plaintiff's Counsel and the Firm are subject to additional § 1927 sanctions in the amount of **$544.00.**[111]

### v. Original and amended motions to recuse

Plaintiff's Counsel filed their recusal motion[112] and amended recusal motion[113] on the heels of this Court's orders denying remand[114] and dismissing Defendant from the case.[115] These motions multiplied litigation because they required Defendant to join the University Defendants'

---

[106] Dkt. No. 62.
[107] Dkt. No. 53.
[108] *See* Dkt. No. 62-1 pp. 40–42.
[109] Dkt. No. 24.
[110] *See Sanders v. Rodriguez*, 7:16-cv-00650, Dkt. No. 27 p. 36, line 14–17.
[111] *See* Dkt. No. 71-1 p. 19. The Court includes entries three, four, and five, but cuts entry three in half due to block-billing. The sum is $544.00.
[112] Dkt. No. 25.
[113] Dkt. No. 27.
[114] Dkt. No. 23.
[115] Dkt. No. 24.

response,[116] resulting in additional, reasonable attorney's fees of **$307.50**.[117] This waste was generated in bad faith and with improper motive.

A substantive basis for Plaintiff's recusal motion was that Judge Alvarez received her undergraduate and graduate degrees from the University of Texas at Austin and that she founded a scholarship at the University of Texas School of Law.[118] However, these facts were public knowledge from the moment this case landed in this Court. If Judge Alvarez's alma mater animated the recusal motions, Plaintiff's Counsel could and should have filed them the moment this case came before Judge Alvarez. They did not.

Instead, the recusal motions were conspicuously filed shortly after the Court issued two adverse rulings. Moreover, Plaintiff's Counsel never sought recusal of Judge Rose Reyna in state court, *even though she too attended the University of Texas School of Law and was also a founder of the exact same scholarship*.[119] In fact, the photos submitted by Plaintiff as part of the motion to recuse feature Judge Reyna standing next to Judge Alvarez,[120] as well as a plaque explicitly stating that the scholarship was "established by Judge[] . . . Rose Guerra Reyna."[121]

The fact that Plaintiff instructed his attorneys to file the recusal motions[122] is of no consequence. Plaintiff's Counsel cannot simply shift the blame to their client in a naked he-made-me-do-it fashion. The Texas Lawyer's Creed imposes a duty on attorneys to advise their

---

[116] Dkt. No. 30.
[117] *See* Dkt. No. 29-5 p. 86. The Court includes entries nine and eleven. Entry nine is billed in block fashion, so it is not possible to determine how much of the $2,160 billed was for a conference concerning the motion to recuse. The Court attributes thirty minutes of the 7.2 hours claims for purposes of the conference, thus resulting in $150 in attorney's fees for entry nine. Combined with the $157.50 fee in entry eleven, the sum total is $307.50.
[118] Dkt. No. 25 pp. 8–9.
[119] https://www.martindale.com/edinburg/texas/rose-guerra-reyna-1695250-a/.
[120] Dkt. No. 25-3 p. 3.
[121] *Id*. p. 2.
[122] Dkt. No. 49-2 p. 2.

clients not to pursue tactics meant to harass, offend, delay, or waste.[123] Thus, Plaintiff's Counsel had a duty not to indulge Plaintiff's requested motions, insofar as they harassed, offended, delayed, or wasted time and resources. Plaintiff's Counsel's sharp, even condescending, language contained within the recusal motions strongly suggest they were emotional backlashes to two adverse rulings, not good faith requests. Thus, Plaintiff's Counsel acted with improper motive and bad faith, and also recklessly disregarded their duty to the Court. Plaintiff's Counsel and the Firm are liable for an additional **$307.50** in attorney's fees under § 1927.

### III. HOLDING

For the foregoing reasons, Defendant's motion for sanctions is **GRANTED** in the amount of **$19,957.63**, assessed jointly and severally against Plaintiff's Counsel and the Firm. This order only *further supports* the previous order[124] as against Plaintiff's Counsel, but is separate and independent with regard to the Firm.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 4th day of August, 2017.

_____
Micaela Alvarez
United States District Judge

---

[123] *See* Texas Lawyer's Creed, https://www.texasbar.com/AM/Template.cfm?Section=Texas_Bar_Journal&Template=/CM/ContentDisplay.cfm&ContentID=22241 ("I will endeavor to achieve my client's lawful objectives in legal transactions and in litigation as quickly and economically as possible . . . . I will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that I abuse anyone or indulge in any offensive conduct . . . . I will advise my client that we will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party . . . . I will advise my client that we will not pursue tactics which are intended primarily for delay.").
[124] Dkt. No. 78.