UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| BIMAL K. BANIK, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:16-CV-00462 |
| § | |
| ANGEL TAMEZ, *et al*, § | |
| § | |
| Defendants. § | |

## OPINION & ORDER

The Court now considers Terence Thompson ("Thompson"), Robert Nelsen ("Nelsen"), Havidán Rodríguez ("Rodríguez"), Guy Bailey ("Bailey"), Paul Foster, William Powell, R. Steven Hicks, Ernest Aliseda, Alex Cranberg, Wallace Hall, Jr., Jeffery Hildebrand, Brenda Pejovich and Robert Stillwell's (collectively, "University Defendants") partial motion to dismiss,[1] as well as Bimal Banik's ("Plaintiff") response.[2] After duly considering the record and authorities, the court **GRANTS** the motion.

### I. BACKGROUND

University Defendants move to dismiss Plaintiff's First Amendment retaliation claim against them. Plaintiff's claim rests upon three instances of alleged protected speech, and thus the Court proceeds to first examine Plaintiff's factual allegations to identify the statements Plaintiff claims are protected speech.

### A. *Statements to Ybarra*

Plaintiff was a tenured chemistry professor at the University of Texas Pan-American ("UTPA").[3] One of his students—Amanda Ybarra ("Ybarra")—met with him to discuss "her

---
[1] Dkt. No. 80.
[2] Dkt. No. 85.
[3] Dkt. No. 79, ¶ 6.

grade in his class, and its impact on her ability to graduate . . . ."[4] Evidently, Plaintiff "noted to the student that she faced particular challenges to graduation because of her personal situation."[5] Thereafter, Ybarra lodged a formal complaint with UTPA officials against Plaintiff for making "a number of disparaging comments about [her] personal life . . . ."[6]

### B. *Statements to Angel Tamez*

Plaintiff's allegations concerning his statement(s) to student Angel Tamez ("Tamez") are obtuse. Only by implication does Plaintiff appear to admit that he referenced an "ad for Stilettos Cabaret, a local gentleman's club, that ran in the UTPA student newspaper with scantily clad women . . . ."[7]

### C. *Statements concerning Hassan Ahmad*

Plaintiff alleges that Hassan Ahmad ("Ahmad"), one of his co-workers, wiretapped Plaintiff's office.[8] Plaintiff further alleges that he "made contact with the UTPA Police Department"[9] and "discussed this matter with UTPA officials . . . ."[10] Plaintiff also alleges that "[o]n more than one occasion, after learning that [Plaintiff] complained of the crime committed by Ahmad, [Plaintiff]'s job was threatened. Additionally, there were a number of attempts made to coerce [Plaintiff] to drop the complaint made against Ahmad. Despite repeated attempts, however, [Plaintiff] refused to do so."[11] Plaintiff also alleges that he "was pressured to sign an

---

[4] *Id.* ¶ 36.
[5] *Id.*
[6] *Id.* ¶ 37; *see id.* n.4.
[7] *Id.* ¶ 40 ("Tamez mentioned Banik's reference to [the above referenced statement]").
[8] Dkt. No. 79, ¶ 9.
[9] *Id.*
[10] *Id.* ¶ 34.
[11] *Id.* ¶ 10.

affidavit of non-prosecution by UTPA officials . . . ."[12] Plaintiff characterizes his speech as that "concerning criminal activity on a public university campus . . . ."[13]

Plaintiff alleges that he was eventually terminated from UTPA and that his application to the University of Texas Rio Grande Valley ("UTRGV") was rejected because of his (aforementioned) speech.[14] Plaintiff filed suit in state court, amending his petition ten times before the case was removed to federal Court.[15] Plaintiff amended his petition an eleventh time in this Court,[16] and through various dismissal motions and orders, this case was substantially narrowed.[17] University Defendants filed the instant motion on July 27, 2017,[18] and Plaintiff timely responded,[19] rendering the motion ripe for review. The Court now turns to its analysis.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[20] This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[21] Courts first disregard from their analysis any conclusory allegations as not entitled to the assumption of truth,[22] and then undertake the "context-specific" task of determining whether the remaining well-pled allegations give rise to an entitlement of relief to an extent that is plausible, rather than merely possible or conceivable.[23] Courts regard all such well-pled facts

---

[12] *Id*. ¶ 45.
[13] Dkt. No. 79, ¶ 35.
[14] *Id*. ¶¶ 39–73.
[15] *See* Dkt. No. 1.
[16] Dkt. No. 79.
[17] *See* Dkt. Nos. 24, 56, & 74.
[18] Dkt. No. 81.
[19] Dkt. No. 85.
[20] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008) (internal quotations omitted).
[21] *Twombly*, 550 U.S. at 555.
[22] *See id.* at 678–79.
[23] *See id*. at 679–80.

as true and view them in the light most favorable to the plaintiff.[24] Notably, "federal pleading standards require a plaintiff to give specific instances of speech," in the First Amendment retaliation context.[25]

### III. DISCUSSION

Plaintiff's Eleventh Amended Complaint, for the first time, makes clear that he is alleging a First Amendment retaliation claim.[26] In this public-employee context, Plaintiff must establish, among other elements, that he spoke as a citizen on a matter of public concern.[27] In making this determination, the Court must consider the content, form, and context of a given statement.[28] In light of the very limited factual allegations, the Court first examines each of these three considerations as to the Ybarra and Tamez "speech."

#### A. *Statements to Ybarra*

Plaintiff's Eleventh Amended Complaint conspicuously omits the content of his speech uttered to Ybarra. Plaintiff does allege that "a student engaged [Plaintiff] in a conversation" but does not provide the content of that conversation. Plaintiff later alleges that he "noted to the student that she faced particular challenges to graduation because of her personal situation."[29] This is the total sum of the content of the speech that Plaintiff admits to in his complaint. Plaintiff does provide the form—oral, and context—a student's conversation with her professor about her grades. Plaintiff, however, attempts to convert this speech into a matter of public concern by labeling this section of his complaint "University Attrition Rates"[30] and claiming that "**if** [he] made any statements, they were comprised of speech concerning attrition rates and the

---

[24] *Id.*
[25] *Rodríguez v. City of La Villa Tex.*, 2014 WL 1600306, at *3 (S.D. Tex. Apr. 21, 2014).
[26] Dkt. No. 79, p. 9 (entitling the theory of recovery a "First Amendment Retaliation Claim").
[27] *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).
[28] *Wetherbe v. Texas Tech Univ. Sys.*, 2017 WL 2722287, at *2 (5th Cir. June 23, 2017).
[29] Dkt. No. 79, ¶ 36.
[30] *Id.* p. 10, § C(i)(b).

impact one's personal situational challenges can have on successfully graduating a public university."[31] Yet, nowhere does Plaintiff provide the content of this alleged speech on attrition rates beyond what the Court has already noted. Clearly, the content, form and context dictate that Plaintiff was speaking as a UTPA professor to one of his students regarding her performance in school. There is nothing about Ybarra's *personal* grades, *personal* life, and *personal* chance of graduation that is public in nature.

Defendants attempt to provide the content of Plaintiff's speech by reference to Ybarra's University complaint against Plaintiff. Plaintiff himself provides the content of Ybarra's complaint in a footnote to Plaintiff's Eleventh Amended Complaint.[32] Nonetheless, Plaintiff "vehemently denies that he made the statements alleged" by Ybarra.[33] Additionally, Plaintiff objects to the Court considering the statements attributed to him by Ybarra.[34] Nevertheless, Plaintiff does not claim that any of the statements Ybarra attributed to him are protected by the First Amendment. Thus, the Court relies on Plaintiff's allegations in his complaint, scant though they may be.

To the extent that Defendants considered the statements Ybarra contends Plaintiff made, it is clear that such statements are not protected speech. Ybarra's complaint alleges that Plaintiff made the following statements to her:

- she looked like she would "have a lot of boyfriends;"
- [Plaintiff] asked if she "regretted having a child;"
- she made "a big mistake in having a child;"

---

[31] *Id*. ¶ 38.
[32] *Id*. p. 4, n.4 (Plaintiff includes numerous footnotes in his complaints that are clearly beyond a short and plaint statement. Counsel apparently is unwilling or unable to conform to the federal pleading standards so have now resorted to the use of footnotes to include materials beyond what should be in the complaint).
[33] Dkt. No. 79, ¶ 38, n.4.
[34] Dkt. No. 85, ¶¶ 55–56.

- it was going to be "extremely hard for [her] to be here at school, and possibly graduate;"

- if everyone found out she was a mother, they would "think [she's] corrupt;"

- if other girls knew about her situation, they would "look down on [her] and feel superior;"

- if other professors in the science department found out, they would "probably not like [her];"

- [Plaintiff] hoped she "learned [her] lesson by having a child, instead of being like all the other girls having sex with a lot of guys."[35]

These statements are all extremely personal in nature. They are specifically directed at Ybarra, and have no place in the marketplace of ideas or public forum. They are not matters of public concern. Thus, as to any of Ybarra's statements, Plaintiff has failed to meet his burden to allege facts that show he spoke on a matter of public concern. In sum, Plaintiff's First Amendment retaliation claim based upon statements made to Ybarra is insufficiently pled, and thus **DISMISSED WITH PREJUDICE**.

    B.    *Statements to Tamez*

As little as Plaintiff provides of the content, form and context of his speech with Ybarra, Plaintiff provides even less as to Tamez. Plaintiff admits only that Tamez recorded Plaintiff and others and Tamez later provided a written statement wherein Tamez claimed Plaintiff made disparaging remarks about a student.[36] Plaintiff appears to concede making a reference to "Stilettos Cabaret, a local gentleman's club"[37] but does not actually state so in his Eleventh Amended Complaint. In fact, Plaintiff does not even admit to having a conversation with Tamez; rather, he states Tamez recorded Plaintiff's conversation with others. Since Plaintiff does not admit any conversation with Tamez, he does not provide the form or context of any such alleged

---

[35] *Id*. n.4.
[36] *Id*. ¶¶ 34–40.
[37] *Id*. ¶ 40 ("Tamez mentioned Banik's reference to ad for Stilleto's Cabaret").

speech. Plaintiff claims only that his "speech concerning pornographic advertising by a public university is a matter of public concern."[38]

Without more, it is impossible to reasonably infer Plaintiff was speaking as a citizen, rather than as a UTPA faculty member, especially since Plaintiff was a UTPA professor and Tamez was one of his students.[39] Moreover, it is not possible to reasonably infer that his statements were on a matter of public concern because Plaintiff provides no context in which to understand his reference to pornographic advertising.[40] In sum, Plaintiff's First Amendment retaliation claim based upon his statements to Tamez is **DISMISSED WITH PREJUDICE**.

C. *Statements concerning Ahmad*

As to Ahmad, Plaintiff at least provides more content, form and context. Plaintiff asserts that following his discovery of a recording device in his office, he made a complaint to the UTPA police. Thereafter, Ahmad, who apparently planted the recording device, was then prosecuted. Plaintiff, however, was pressured to sign a non-prosecution affidavit. Nonetheless, on June 6, 2013, Ahmad pled guilty.

Thus, the Court can determine that Plaintiff's speech consists of 1) his complaint to the UTPA Police Department and 2) his refusal to sign the non-prosecution affidavit.[41] As to the first instance, the Court finds a complaint to UTPA police about criminal activity on campus to be speech as a citizen on a matter of public concern. As to the second instance, the question is closer—the Dean and Assistant Dean were pressuring a professor to withdraw a criminal complaint against another professor. Certainly, this appears to be non-speech as an employee on a personnel matter at the university.

---

[38] *Id*. ¶ 42,
[39] *See id*. n.11. (Tamez's written complaint clarifies that he was one of Plaintiff's students).
[40] *Connick v. Myers*, 461 U.S. 138, 147 (1983) ("Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement.").
[41] *See Caleb v. Grier*, 598 Fed. Appx. 227, 237 (5th Cir. 2015) ("That Appellants have alleged retaliation based on their refusal to speak does not affect the analysis.), cert. denied, 135 S. Ct. 2813 (2015).

However, even if both instances constitute protected speech, Plaintiff fails to establish the fifth element of a First Amendment retaliation claim—that the employee's speech was a substantial or motivating factor behind the defendant's actions.[42] Plaintiff's conclusory allegations are properly ignored.[43] The Fifth Circuit has clarified that a First Amendment retaliation claim can only be maintained against *final* decision-makers.[44] Here, Plaintiff only alleges that Bailey and Rodríguez were final decision-makers with regard to the decision not to hire Plaintiff at UTRGV.[45] Thus, Plaintiff's First Amendment claim must be **DISMISSED WITH PREJUDICE** insofar as it is alleged against any other Defendants on the basis of denial of UTRGV employment.

Similarly, Plaintiff only alleges that members of the University of the Texas System Board of Regents ("Board of Regents") were the final decision-makers with regard to the decision to terminate Plaintiff from UTPA.[46] Thus, Plaintiff's First Amendment claim against Thompson, Nelsen, Rodríguez, and Bailey (who are not *members* of the Board of Regents) must be **DISMISSED WITH PREJUDICE** insofar as it is grounded in Plaintiff's termination from UTPA.

With regard to Plaintiff's termination from UTPA, Plaintiff only alleges that the Board of Regents—the final decision makers—"*were aware* that [Plaintiff] had spoken on matters of

---

[42] *Hardesty v. Cochran*, 621 Fed. Appx. 771, 775 (5th Cir. 2015); *see also James v. Tex. Collin Cty.*, 535 F.3d 365, 375–76 (5th Cir. 2008) (noting that the speech must have been "a substantial or motivating factor behind the defendant's actions."); *Ortego v. Standige*, 578 Fed. Appx. 414, 418 (5th Cir. 2014) (same).

[43] *See Carson v. Kelly*, 2011 WL 3331801, at *3 (N.D. Tex. June 24, 2011) (allegations going to state of mind must be factually supported, and not conclusory), report and recommendation adopted, 2011 WL 3348102 (N.D. Tex. July 29, 2011); *Wade v. Travis Middle Sch.*, 2011 WL 3880481, at *4 (N.D. Tex. Aug. 9, 2011), report and recommendation adopted, 2011 WL 3897855 (N.D. Tex. Sept. 1, 2011) (same); *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) ("[R]espondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind. His pleadings thus do not meet the standard necessary to comply with Rule 8.").

[44] *Juarez v. Aguilar*, 666 F.3d 325, 334 (5th Cir. 2011) (citing *Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004) ("As to causation, only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983.")).

[45] Dkt. No. 79, ¶ 67 ("Bailey and Rodríguez made the decision to not hire [Plaintiff] at UTRGV.").

[46] *Id*. ¶ 48 ("[The members of UT System Board of Regents . . . voted to terminate [Plaintiff's] faculty appointment from UTPA.").

public concern relating to Ahmad's criminal activity . . . ."[47] Plaintiff does, however, allege that it was initially Thompson who recommended termination.[48] According to Plaintiff, Thompson was involved in the drafting of Tamez' statement, related to Ybarra's complaint.[49] While Thompson's recommendation was made to Dean Trant, there are absolutely no facts that Thompson's recommendation was based, in whole or in part, on any "Ahmad" speech. In fact, there are no factual allegations that Thompson was involved in the Ahmad matter. It is also clear that Dean Trant "based on Thompson's recommendation"[50] in turn recommended termination to Rodriguez, who recommended termination to Nelsen, who instituted Tribunal proceedings. The Tribunal then recommended termination to Nelsen who recommended termination to the Board of Regents. The Court cannot reasonably infer from the Board of Regents' awareness of Plaintiff's "Ahmad" speech that it was a substantial or motivating factor animating Plaintiff's termination.

Similarly, with regard to Rodríguez and Bailey's denial of Plaintiff's application to UTRGV, Plaintiff only alleges that they "both *had access* to [Plaintiff's] UTPA personnel records which contained the protected speech."[51] Again, the Court cannot reasonably infer from Rodríguez and Bailey's mere access to Plaintiff's statements concerning Ahmad that they were a substantial or motivating factor animating the rejection of Plaintiff's UTRGV application. For these reasons, Plaintiff's First Amendment claim based upon Plaintiff's statements concerning Ahmad is **DISMISSED WITH PREJUDICE.**

---

[47] *Id*. ¶ 52 (emphasis added).
[48] *Id*. ¶ 43.
[49] *Id*. ¶ 40.
[50] Dkt. No. 79, ¶ 43.
[51] *Id*. ¶ 71 (emphasis added). Plaintiff also alleges that he "specifically referenced the protected speech contained in the false complaint filed by the UTPA student," but this particular speech is not the speech at issue—that concerning Ahmad.

## IV. HOLDING

For the foregoing reasons, University Defendants' motion to dismiss is **GRANTED**, and Plaintiff's First Amendment retaliation claims against them are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 21st day of September, 2017.

_____
Micaela Alvarez
United States District Judge